THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* OSCAR WEINER, Plaintiff in Error.

*Opinion filed December 22, 1915.*

1. POLICE POWER—*police power defined.* The police power is that inherent and plenary power in the State which enables it to prohibit all things hurtful to the comfort, safety and welfare of society.

2. SAME—*a rightful exercise of police power is not a violation of the fourteenth amendment.* A rightful exercise of the police power is not a violation of the fourteenth amendment to the Federal constitution even though property interests are involved.

3. SAME—*police power, though broad, is not without its restrictions.* The police power, though far reaching, is not without its restrictions, and rights of property will not be permitted to be arbitrarily invaded under the guise of police regulations.

4. SAME—*what question is for the court.* While courts will not pass upon the wisdom of an act involving the exercise of police power, they will pass upon the question whether such act has a substantial relation to the police power.

5. SAME—*when court must hold statute or ordinance void.* If it is manifest to the court that a statute or ordinance, sustainable only under the police power, is merely an invasion of property rights under the guise of the police power, it is the duty of the court to hold the statute or ordinance void.

6. CONSTITUTIONAL LAW—*right of an individual to pursue an innocent calling.* Under the State and Federal constitutions an individual may pursue all such callings or occupations as are innocent in themselves and not hurtful to the public, and the legislature cannot interfere with such right.

7. SAME—*sections 1 and 2 of the Second-hand Mattress law of 1915 are unconstitutional.* Sections 1 and 2 of the act of 1915, (Laws of 1915, p. 375,) which relate to second-hand mattresses, quilts and bed comforters, are unconstitutional in prohibiting the sale of second-hand mattresses, quilts and comforters notwithstanding they may have been sterilized or re-made from sterilized second-hand material.

8. SAME—*sections 1 and 2 of the Second-hand Mattress act of 1915 are class legislation.* Sections 1 and 2 of the act of 1915, (Laws of 1915, p. 375,) which prohibit the sale of second-hand mattresses, quilts or bed comforters, or of such articles when made of material which has become second-hand by use about the person, are class legislation, in that they do not apply to pillows.

9. SAME—*legislature cannot arbitrarily destroy property*. The legislature cannot arbitrarily destroy property, or any substantial interest therein, under the guise of a health regulation or for the ostensible purpose of preventing fraud and deceit.

WRIT OF ERROR to the Municipal Court of Chicago; the Hon. HARRY M. FISHER, Judge, presiding.

ZOLINE & LEVINSON, (ELIJAH N. ZOLINE, of counsel,) for plaintiff in error.

P. J. LUCEY, Attorney General, MACLAY HOYNE, State's Attorney, and A. B. GARRETT, for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is a prosecution commenced on information in the municipal court of Chicago against Oscar Weiner, plaintiff in error, charging him with violating an act passed at the last session of the legislature regulating the making, re-making and renovating of mattresses, quilts or bed comforters and regulating the sale thereof. Jury was waived, and the cause having been submitted to the court, plaintiff in error was found guilty as charged in the information and a fine of $25 imposed. The constitutionality of said act being involved, this writ of error was sued out directly to this court.

The act in question, (Laws of 1915, p. 375,) which went into force July 1, 1915, is as follows:

"Section 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly:* That no person shall use, either in whole or in part, in the making of any mattrass (mattress), quilt, or bed comforter any second-hand cotton, cotton-felt, hair, wool, shoddy, excelsior or kapoc(k), or any other soft material which has been made second-hand by use about the person; nor shall any person sell, or offer to expose for sale, or be in the possession or with intent to sell, or deliver any mattrass

(mattress), quilt, or bed comforter, in which has been used, in the making, either in whole or in part, any second-hand cotton, cotton-felt, hair, wool, shoddy, excelsior or kapoc(k) or any other soft material which has been made second-hand by previous use in or about the person.

"Sec. 2. No person shall sell, or offer or expose for sale, or be in the possession of, with intent to sell or deliver, any mattrass (mattress), quilt or bed comforter which has not plainly written or printed thereon upon a cloth or permanent tag, securely fastened to the outside covering thereof, a statement in English language setting forth the kind of material used for filling and the proportion of each kind of material, if more than one kind of material is used, together with the name of the manufacturer or vendor.

"Sec. 3. Nothing herein shall prohibit any person from re-making or renovating, or employing others to re-make or renovate for him, any mattrass (mattress), quilt, or bed comforter for his own use, but all material used for filling in the re-making or renovating of any mattrass (mattress), quilt, or bed comforter, together with the cover thereof, shall be first sterilized and all such re-made or renovated mattrasses (mattresses), quilts, or bed comforters shall have plainly written or printed thereon upon a cloth or permanent tag, securely fastened to the outside covering thereof, a statement in English language, setting forth that the same has been renovated or re-made, and that the contents and cover have been sterilized, together with the name and address of the person by whom such sterilizing and re-making or renovating was performed.

"Sec. 4. Any person who shall violate any of the provisions of this act shall be guilty of a misdemeanor and upon conviction thereof shall be fined for each offense in the sum of not less than $25 nor more than $100."

On the trial of the case it was proved that plaintiff in error was a dealer in new and second-hand furniture in the city of Chicago; that on July 22, 1915, he offered for

sale at his store to one Isidore Schuman a second-hand felt mattress the felt of which had been previously used, said mattress having no tag setting forth the information required by the foregoing statute.

The uncontroverted testimony in the case was to the effect that sterilized second-hand material or a sterilized second-hand mattress would be safer for use than a new mattress not sterilized; that even hospital bedding used by patients having contagious or infectious diseases is not destroyed but is sterilized, except that in straw or excelsior mattresses the cover is sterilized and re-filled with new material because the cost of new straw or excelsior is cheaper than the cost of sterilizing the old; that sleeping upon a used mattress or being covered by a comforter or quilt which has been used is not dangerous to health *per se.* The proof was that the chance of coming in contact with infected bed-clothing is always present in traveling and stopping at hotels, and a new mattress, if not sterilized, is liable to carry contagion; that any renovation short of sterilization fails to render a mattress or bedding free from the possibility of communicating infectious or contagious disease if the germs are present; that a bed comforter or mattress used by a normally healthy person would not be injurious if used by another person nor be injurious to the public health; that it was the practice of hospitals and the public institutions to sterilize bedding, which rendered it safe for further use.

Counsel for plaintiff in error contended below, and contend here, that said act is unconstitutional, violating both the State and the Federal constitutions, as denying to the one punished thereunder due process of law. If the act can be sustained at all it must be under the police power of the State.

The power of the legislature to pass laws for the preservation of good order or to promote public welfare and safety, or to prevent fraud, deceit, cheating and imposition,

has always been recognized in this State. (*People* v. *Free-man,* 242 Ill. 373; *People* v. *Schenck,* 257 id. 384.) The police power was in the State prior to the adoption of the constitution and remained with the State in the formation of the original constitution of the United States and has not been taken away by any of the amendments adopted since the formation of that constitution. (*Slaughter House cases,* 16 Wall. 36.) A rightful exercise of the police power is not a violation of the fourteenth amendment even though property interests are affected. (*Powell* v. *Pennsylvania,* 127 U. S. 678; *Booth* v. *Illinois,* 184 id. 425; *Hammond Packing Co.* v. *Montana,* 233 id. 331.) The police power has been defined as that inherent and plenary power in the State which enables it to prohibit all things hurtful to the comfort, safety and welfare of society. (*Town of Lake View* v. *Rose Hill Cemetery Co.* 70 Ill. 191.) This power is very broad and far-reaching, yet it is not without its restrictions. While the courts will not pass upon the wisdom of an act concerning the exercise of the police power, they will pass upon the question whether such act has a substantial relation to the police power. (*Mugler* v. *Kansas,* 123 U. S. 623; *Chicago, Burlington and Quincy Railway Co.* v. *Illinois,* 200 id. 561; *Booth* v. *Illinois, supra;* *Sanitary District* v. *Chicago and Alton Railroad Co.* 267 Ill. 252; *People* v. *Steele,* 231 id. 340; *City of Chicago* v. *Netcher,* 183 id. 104; *Eden* v. *People,* 161 id. 296.) It must have some relation and be adapted to the ends sought to be accomplished. Rights of property will not be permitted to be invaded under the guise of police regulations. (*Bailey* v. *People,* 190 Ill. 28.) The court must be able to see, in order to hold that a statute or ordinance comes within the police power, that it tends in some degree toward the prevention of offenses or the preservation of the public health, morals, safety or welfare. It must be apparent that some such end is the one actually intended and that there is some connection between the provisions

of the law and such purpose. If it is manifest that the statute or ordinance has no such object but under the guise of a police regulation is an invasion of the property rights of the individual, it is the duty of the court to declare it void. (*City of Chicago* v. *Netcher, supra.*) The evidence shows conclusively that the business of making mattresses out of second-hand material and re-making old mattresses and bed clothes is not injurious *per se* to the public health. Indeed, the legislature recognizes this in the act itself, for it permits the re-making or renovating of any mattress, quilt or bed comforter for one's own use, provided the materials used shall have been first sterilized. This right, however, is denied to the manufacturer and dealer when the article of bedding is for sale. Obviously, if by any process a renovated mattress can be rendered safe for the use of the person re-making it, it can also be made safe for sale. Under the Federal and State constitutions the individual may pursue, without let or hindrance, all such callings or pursuits as are innocent in themselves and not injurious to the public. These are fundamental rights of every person living under this government and the legislature by its enactments cannot interfere with such rights. (*Frorer* v. *People,* 141 Ill. 171; *Ramsey* v. *People,* 142 id. 380; *City of Chicago* v. *Netcher, supra.*) The evidence shows that second-hand bedding does not necessarily convey infectious or contagious diseases and that a lawful business of selling or dealing in such may be carried on without danger to the public health. The test of reasonableness required in a statute based on the police power, as to whether it is in violation of the constitution, is whether in its attempted regulation it makes efficient constitutional guaranties and conserves rights or is destructive of inherent rights. (*Mehlos* v. *Milwaukee,* 37 Ann. Cas. 1102.) It is the nature of the previous use, condition or exposure in respect to contagious or infectious diseases which makes the use of second-hand material dangerous in the manufacture of mat-

tresses, comforters and quilts, and not the mere fact of the previous use of such material by other persons. (*Town of Greensboro* v. *Ehrenreich,* 80 Ala. 579.) It is eminently proper to require that material be free from germs of contagion and infection before being used in mattresses, comforters or quilts, whether the material be second-hand or new, but the possible danger to health or safety does not justify the absolute prohibition of a useful industry or practice where the danger can be dealt with by regulation. (Freund on Police Power, sec. 62; see, also, *People* v. *Ringe,* 197 N. Y. 143; *Marymont* v. *Nevada State Banking Board,* 31 Ann. Cas. 162.) The act does not attempt to prohibit the use of second-hand mattresses but does prevent their ever again being used in the manufacture of other mattresses which are to be sold. To prohibit absolutely the use of such material in the manufacture of mattresses for sale when not inherently dangerous and when it may be rendered safe by reasonable regulation is an invasion of personal and property rights within the meaning of the Federal and State constitutions. By this act the State has deprived the citizen of the lawful use of his property in a manner not injurious or dangerous to others.

It is argued by the State that laws similar to this have been passed in other jurisdictions in this country, but so far as we are advised the highest courts of those various States have not passed on the constitutionality of any of those acts. Indeed, the wording in most of those statutes is so very different from the wording of this statute that any ruling as to them would be of very little assistance in this case. A city ordinance very similar in some respects to this statute was held unconstitutional by the Supreme Court of Alabama in *Town of Greensboro* v. *Ehrenreich, supra.*

The argument of counsel for the State that this act should be upheld in order to prevent fraud or deceit in the sale of goods is without merit. The provision in section 3 of the act requiring that material used in re-making mat-

tresses, quilts and comforters for the person's own use must be sterilized does not violate any constitutional prohibition and is a proper exercise of the police power. That same requirement could be made in an act with reference to the manufacture and sale of mattresses. Regulations to prevent fraud and deceit in such manufacture and sale could be very readily provided, so as to protect the public, without prohibiting the use of second-hand material if properly renovated and sterilized. The power of the legislature to protect society from disease or epidemic is very broad, but the legislature cannot arbitrarily destroy property, or any substantial interest therein, under the guise of a health regulation or for the ostensible purpose of preventing fraud or deceit.

Counsel for plaintiff in error further argue that there is a discrimination between the manufacturers and dealers in pillows and manufacturers and dealers in mattresses, comforters and quilts, especially after they have been used, as there is no provision made as to pillows; that, so far as this act is concerned, material made second-hand in the same way as the material in mattresses may again be made into pillows and sold without any regulation whatever. Under the decisions of this State this is class legislation. *People* v. *Schenck, supra; Josma* v. *Western Steel Car Co.* 249 Ill. 508; *Manowsky* v. *Stephan,* 233 id. 409; *Horwich* v. *Walker-Gordon Laboratory Co.* 205 id. 497; *Lippman* v. *People,* 175 id. 101; 1 Lewis' Sutherland on Stat. Const. (2d ed.) sec. 203.

The provisions of sections 1 and 2 of the act are arbitrary and unreasonable and must be held unconstitutional and void.

The judgment of the municipal court of Chicago is therefore reversed.                    *Judgment reversed.*