(No. 56984.—

THE CITY OF CARBONDALE, Appellant, v. VIOLET
MAE YEHLING *et al.*, Appellees.

*Opinion filed June 9, 1983.*

James R. Zimmer, of Carbondale, for appellant.

Don E. Prosser, of Kimmel, Huffman, Prosser & Kimmel, Ltd., of Carbondale, for appellees Jack C. Atwood *et al.*

John Speroni, of Garrison & Garrison, of Marion, for appellees W. E. Kimmel and Euline Kimmel.

JUSTICE CLARK delivered the opinion of the court:

On March 18, 1982, the city of Carbondale filed several petitions for condemnation in the circuit court of Jackson County. Defendants Mary Lou Atwood and Atwood Drugs, Inc., filed a motion to dismiss and traverse asserting that the city of Carbondale lacked legislative authority to acquire the premises sought to be taken under sections 11—74.3—4 and 11—74.4—3 of the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, pars. 11—74.3—4, 11—74.4—3). Defendant Yehling and other defendants alleged that ordinances 81—105 and 82—06 were void since they constituted an improper use of home rule authority, were not authorized by State law, and were unconstitutional under both the United States and Illinois constitutions.

On May 18, the city of Carbondale moved to amend its petitions to delete reference to and reliance upon sections 11—74.3—4 and 11—74.4—3 of the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, pars. 11—74.3—4, 11—74.4—3). The motion was allowed.

The ordinances passed by the city of Carbondale are similar to the Eminent Domain Act (Ill. Rev. Stat. 1979, ch. 47, par. 1 *et seq.*) and division 74.4 of the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 11—74.4—1 *et seq.*).

Motions to dismiss were filed in all cases. On June 15, 1982, the trial court granted the motions to dismiss the petitions in the eight cases before it. On June 25, 1982, the circuit court issued an amended order reaffirming the dismissals, executed a certificate of importance, and certified the following question:

"Does a Home Rule Municipality have the authority under article VII, section 6 of the 1970 Illinois Constitution to enact and enforce an ordinance giving said municipality the right to acquire real property by eminent domain?"

On August 9, 1982, this court granted the city's motion for a direct appeal under Rule 302(b) (73 Ill. 2d R. 302(b)).

The city of Carbondale, in enacting its eminent domain ordinances, sets forth procedures to exercise eminent domain powers within the city limits of Carbondale for the purpose of redevelopment of the business district.

We first look to the constitutional grant of home rule authority in article VII, section 6(a), of the 1970 Constitution, which provides:

"Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debts." Ill. Const. 1970, art. VII, sec. 6(a).

Home rule units were granted broad powers of self-government, and the constitution mandates that such home rule powers be construed liberally. Ill. Const. 1970, art. VII, sec. 6(m).

This court has recognized that the Constitution's home rule provisions represent a significant change from our prior law, substantially and drastically altering the relationship between State and local government. (*Kanellos v. County of Cook* (1972), 53 Ill. 2d 161.) At the heart of the change is the Constitution's rejection of Dillon's Rule, which had held that units of local government could exercise only those powers expressly granted by State statute or necessarily and fairly implied from the legislature's expressed grants. (1 J. Dillon, Municipal Corporations 448-49 (5th ed. 1911).) In *Kanellos v. County of Cook* (1972), 53 Ill. 2d 161, 166, the court said that "the power of the General Assembly to limit the actions of home-rule units has been

circumscribed and home-rule units have been constitutionally delegated greater autonomy in the determination of their government and affairs. To accomplish this independence, the constitution conferred substantial powers upon home-rule units subject only to those restrictions imposed or authorized therein."

The question we are faced with then is twofold: (1) Does the subject matter pertain to the city's government and affairs? and if so, (2) Is the ordinance preempted by State regulation of the subject matter?[1]

Does the exercise of the home rule unit's eminent domain power to condemn private property within the city of Carbondale for public use pertain to the city's government and affairs?

The city of Carbondale passed the ordinances in question for the express purpose of urban redevelopment of Carbondale's business district and sought to accomplish redevelopment and eradication of blight by exercising the power of eminent domain. The defendants assert that the language of the Committee on Local Government of the constitutional convention supports their position that any exercise of eminent domain powers, whether within the boundaries of Carbondale's city limits or not, does not pertain to Carbondale's government and affairs. The Committee on Local Government of the constitutional convention said:

> "[T]he powers of home-rule units relate to their own problems, not to those of the state or the nation. Their

[1] See *Carlson v. Village of Worth* (1975), 62 Ill. 2d 406, 425 (Underwood, J., dissenting). The majority holding in *Carlson* addressed a non-home-rule unit's authority to superimpose requirements of its own upon the holder of a permit for the operation of a sanitary landfill issued by the State Environmental Protection Agency; in disagreeing with the court's holding Justice Underwood articulated analogous questions to those posed here as the proper mode of analysis when the court is faced with a question of whether a home rule unit has the authority to enact a particular ordinance. The questions were not raised in the majority's opinion in *Carlson* because the case dealt with a non-home-rule municipality.

powers should not extend to such matters as divorce, real property law, trusts, contracts, etc. which are generally recognized as falling within the competence of state rather than local authorities. *** The intent of this draft as in the Committee's proposal is to give broad powers to deal with local problems to local authorities." 7 Record of Proceedings, Sixth Illinois Constitutional Convention 1621-22 (hereinafter cited as Proceedings).

Certain powers are of a State or regional nature and do not therefore pertain to a home rule unit's affairs. We do not believe that the inclusion of real property law in the comments as to the matters to which home rule powers should not extend proscribe a home rule eminent domain ordinance. It is apparent that the language quoted in the context of the comments was a further clarification in leaving to the State those traditional areas of the law that are of statewide concern. Those comments reflect an intention that a divorce decree entered in Chicago will be honored in Waukegan, a contract signed in Evanston will not require additional consideration to constitute a valid contract in Peoria, and what is essential for a valid conveyance of a parcel of land in Joliet is also essential if the land is to be conveyed in Kankakee.

The city of Carbondale seeks to utilize eminent domain powers to stimulate its economic development in constructing a hotel, convention center and parking garage in Carbondale's business district. The land to be taken is all within the limits of Carbondale.

In our prior case law since the adoption of the 1970 Constitution the "pertaining to government and affairs question" has been raised on a number of occasions and most often answered in the negative when the interests affected extended well beyond those confined to home rule units of government. For instance, this court rejected the validity of a home rule environmental ordinance which would have affected a regional sanitary district and its

member units of government in *Metropolitan Sanitary District v. City of Des Plaines* (1976), 63 Ill. 2d 256, 261. The court found that because of its effect the ordinance was beyond the enacting unit's home rule powers and functions and not pertaining to the unit's government and affairs. 63 Ill. 2d 256, 260.

Another case where a home rule ordinance was struck down as not pertaining to local government and affairs was *McLorn v. City of East St. Louis* (1982), 105 Ill. App. 3d 148. The city ordinance in that case prohibited non-wage garnishment of city funds deposited in financial institutions in East St. Louis. The appellate court held that the institution of banking is statewide and of such a nature that the ordinance could not qualify as one that addressed local government and affairs.

In *County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494, this court gave its most comprehensive analysis of the "pertaining to local government and affairs" clause. The court said that a matter may be of both statewide and local concern but only if it is sufficiently local in character is it subject to home rule powers. (75 Ill. 2d 494, 509.) In *Sexton* the court balanced the potential impact on persons and property not within Cook County against the home rule unit's interest in local regulation and concluded that while the county must comply with the environmental regulations of the State Environmental Protection Agency in zoning land for sanitary landfill sites, the State agency must also comply with the home rule unit's valid zoning ordinances when issuing permits for landfill sites. 75 Ill. 2d 494, 516.

While we view the concerns of Carbondale in the instant case to be sufficiently local in character that the city's purpose "pertain[s] to the local government and affairs," we next have to determine whether enforcement of the city's eminent domain power as outlined in the city ordinance impermissibly interferes with the State judiciary

system. We find that in imposing duties upon county and judicial officials and prescribing the order of certain court proceedings, the ordinance is no longer local in character. Although Carbondale's purpose in enacting the ordinances in question pertains to its local government and affairs, the method of enforcement prescribed to carry out the eminent domain proceedings is impermissible, and therefore the ordinances cannot be considered as pertaining to the local affairs of Carbondale.

The plaintiff asserts that the courts of this State are often called upon to enforce or interpret municipal ordinances. That assertion is certainly true, and the city of Carbondale is correct in its citation to *City of Evanston v. Create, Inc.* (1981), 85 Ill. 2d 101, for such a proposition. In *Create* the court found that Evanston's landlord and tenant ordinance could define notice procedures, duties of the parties and remedies available, since there were no conditions placed upon access to the State's court system. *City of Evanston v. Create, Inc.* (1981), 85 Ill. 2d 101, 116.

In the instant case, the ordinance purports to define the notice procedures of the courts, duties of parties in court, and specific remedies available in court proceedings. In doing so the city is attempting to set forth rules for the State judiciary to follow. This exercise of power is clearly a matter of State concern, and not a local function pertaining to a home rule unit's government and affairs.

In *Ampersand, Inc. v. Finley* (1975), 61 Ill. 2d 537, the court struck down a home rule county's attempt to require the collection of filing fees in civil suits to be used to finance the county's law library. In *Ampersand*, the attempted collection was limited to the enacting county and the intended use was of local concern. Yet the court held the county's ordinance did not pertain to the county's government or affairs because of its impact on the administration of justice. The court was unable to "accept defendants' argument that since the operation of the library is a

local function so also is the imposition of the fee to support it. The payment of a fee under the ordinance is the price of admission to the courts of the State of Illinois and not to the Cook County Law Library." *Ampersand, Inc. v. Finley* (1975), 61 Ill. 2d 537, 543. The court said that "[a]rticle VI of the 1970 Constitution does not contemplate nor does it authorize the exercise of any control over or permit the imposition of a burden on the judicial system by any local entity." *Ampersand, Inc. v. Finley* (1975), 61 Ill. 2d 537, 542.

The reasoning articulated in *Ampersand* applies here. The enforcement provisions of ordinance 81—105 exceed the plaintiff's authorized home rule authority.

In *Paper Supply Co. v. City of Chicago* (1974), 57 Ill. 2d 553, the defendants argue that under certain provisions of the ordinance in question there, the Administrative Review Act could be made to apply to administrative decisions rendered under the ordinance. The court disagreed in finding that "[t]he method of judicial review of the decisions of the defendant city's administrative agencies is not a 'function pertaining to its government and affairs' within the contemplation of section 6 of article VII of the Constitution of 1970, and the determination of the manner or method of such review is not within the powers conferred upon the City." (57 Ill. 2d 553, 580.) While finding that part of the ordinance in *Paper Supply* invalid, the court did determine that the unconstitutional section was severable.

In the instant case, the enforcement provisions in question are not severable. We conclude that despite separability clauses within both ordinances 81—105 and 82—06 the enforcement provisions that invalidate Carbondale's ordinances are inextricably interwoven within the ordinances.

The following excerpts provide a sampling of the method of judicial review that ordinance 81—105 attempts to set forth.

Section 22—1—2 of ordinance 81—105 provides:

"Private property shall not be taken or damaged for public use without just compensation; and that in all cases in which compensation is not made by the City in its corporate capacity, such compensation shall be ascertained by a jury, as hereinafter prescribed. Where compensation is so made by the City, any party upon application may have a trial by jury to ascertain the just compensation to be paid. Such demand on the part of the City shall be filed with the petition for condemnation of the City. Where the City is the petitioner, a defendant desirous of a trial by jury must file a demand therefor on or before the return date of the summons served on him or fixed in the publication in case of defendants served by publication. In the event no party in the condemnation suit demands a trial by jury as provided for by this section, then the trial shall be before the court sitting without a jury." City of Carbondale Ordinance 81—105, sec. 22—1—2 (1981).

Section 22—1—3.2(A) of ordinance 81—105 provides:

"(A) The court shall fix a date, not less than 5 days after the filing of such motion [a motion for taking], for the hearing thereon, and shall require due notice to be given to each party to the proceeding whose interests would be affected by the taking requested, except that any party who has been or is being served by publication and who has not entered his appearance in the proceeding need not be given notice unless the court so requires, in its discretion and in the interests of justice." City of Carbondale Ordinance 81—105, sec. 22—1—3.2(A) (1981).

Section 22—1—3.3 of ordinance 81—105 provides:

"(A) If the petitioner deposits with the county treasurer money in the amount preliminarily found by the court to be just compensation, the court shall enter an order of taking, vesting in the petitioner the fee simple title (or such lesser estate, interest or easement, as may be required) to the property, if such vesting has been requested, and has been found necessary by the court, at such date as the court considers proper, and fixing a date

on which the petitioner is authorized to take possession of and to use the property." City of Carbondale Ordinance 81—105, sec. 22—1—3.3 (1981).

The city of Carbondale cannot dictate procedures that the courts of this State are to follow. Section 5 of ordinance 82—06 provides for the city manager to acquire property through condemnation proceedings as authorized by the laws of the city of Carbondale. (See City of Carbondale Ordinance 82—06, sec. 5 (1982).) Because we find that ordinance 81—105 improperly infringes upon the State judicial system, we also have determined that ordinance 82—06, in calling for the city manager to take action pursuant to ordinance 81—105 in condemning private property, is invalid.

While much of the language of ordinance 81—105 is taken verbatim from the Eminent Domain Act (Ill. Rev. Stat. 1979, ch. 47, par. 1 *et seq.*), such drafting on the part of Carbondale does not cure the constitutional infirmity that exists here.

In conclusion, we hold that the ordinances in question do not "pertain to the government and affairs" of the city of Carbondale and therefore cannot stand. It is unnecessary for us to discuss the question of the State's preemption since we have found that the method of enforcement to take property by eminent domain goes beyond Carbondale's home rule authority.

The judgment of the circuit court of Jackson County granting the defendants' motion to dismiss is affirmed.

*Judgment affirmed.*