THE TOWN OF NORMAL, Plaintiff-Appellee, v. SEVEN KEGS *et al.*, Defendants (B and J Sales, Inc., Intervenor-Appellant).

Fourth District   No. 4—91—0573

Opinion filed September 17, 1992.—Rehearing denied October 19, 1992.

COOK, J., dissenting.

Costigan & Wollrab, P.C., of Bloomington (Paul R. Welch, of counsel), for appellant.

Wayne Karplus, Town Attorney, of Normal, for appellee.

JUSTICE KNECHT delivered the opinion of the court:
On June 28, 1991, the circuit court of McLean County ordered the forfeiture of seven kegs, two beer tappers, and two ice barrels which had been seized by the Normal police department, pursuant to a municipal ordinance, after being used in the unlawful sale of alcohol. Intervenor, B & J Sales, Inc. (B & J), claiming an interest in these items, appeals the order of June 28, 1991, contending (1) in enacting this ordinance, the Town of Normal (Normal) exceeded its powers as a

home-rule municipality under the Illinois Constitution (Ill. Const. 1970, art. VII, §6); and (2) the ordinance deprived B & J of its property without due process of law pursuant to the United States and Illinois Constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2). We agree and reverse.

On September 7, 1990, Officer Timothy Freesmeyer of the Normal police department purchased alcohol at a private party while acting undercover. The vendors did not have a license to sell alcoholic beverages. Later, Freesmeyer used a municipal ordinance (Normal, Ill., Municipal Code, ch. 17, §17—3—1 (1990)) to secure a warrant to seize any property associated with the unlawful sale of alcohol. He returned to the apartment where he had purchased the alcohol, and seized seven kegs of beer, two tappers, two plastic ice barrels and $254 in United States currency. B & J claims no interest in the currency and does not challenge its forfeiture.

Municipal charges for the unlawful sale of alcohol were filed against eight individuals. Charges for violation of the municipal ordinance were dropped against all individuals except one in return for those individuals forfeiting any claim to the property in question. The last defendant pleaded guilty to the offense of the unlawful sale of alcohol (Normal, Ill., Municipal Code, ch. ____, §4.1—2 (1980)), and also waived any claim to the property in question. Normal then published a notice of property forfeiture in a local newspaper on September 20, 27, and October 3, 1990.

B & J filed a claim with Normal for return of the items and, in response, on November 6, 1990, Normal filed a complaint in forfeiture to perfect title for the seven kegs, two tappers and two plastic ice barrels. The suit was brought under a municipal ordinance which provided for the forfeiture of property used to facilitate the unlawful sale of alcoholic liquor.

The forfeiture ordinance basically provides items such as the kegs, tappers and plastic ice barrels are contraband if used to facilitate the unlawful sale of alcoholic liquor under the ordinances of Normal. The forfeiture ordinance provides for notice by publication to persons claiming an interest in the property, and provides Normal may retain the property unless the person or persons charged with the use of the property in an unlawful manner are acquitted of the ordinance violation. Here, one of the defendants who was charged with the unlawful sale of alcohol pleaded guilty. Thus, the property seized as contraband, because it was used by the defendant to facilitate the unlawful sale of alcohol, could be retained by Normal.

The trial court granted the forfeiture despite arguments by B & J that the ordinance violated due process and exceeded the town's home-rule authority. B & J owned the two tappers and the two ice barrels. B & J also had a property interest in the seven kegs, although they were nominally owned by Anheuser-Busch.

B & J is the sole distributor and agent for Anheuser-Busch in the McLean County area. The distributor receives full kegs of beer from the brewery and distributes them to local liquor retailers. Anheuser-Busch imposes a refundable deposit charge, which B & J pays. The retailer pays a refundable deposit on the keg to B & J. The retailer then sells the beer in the keg to consumers. B & J also owns tappers and barrels, which are also provided to the retailer upon payment of a refundable deposit. Thus, customers purchase beer from a retailer and acquire temporary control over the keg and assorted equipment such as the tappers and barrels owned by B & J. Both the retailer and B & J assume the equipment will be returned.

The forfeiture occurred in this context. A retailer which sells products distributed by B & J sold kegs of beer to a customer or customers who then used the kegs, tappers, and barrels to unlawfully sell alcohol at a party in an apartment. B & J is not involved in how or with whom liquor retailers conduct their business. It was stipulated B & J had no prior knowledge of the unlawful use of the equipment.

■ B & J first contends the forfeiture ordinance violates the Illinois Constitution because Normal, as a municipality, does not have the power to order a forfeiture for a violation of its local ordinances. The Illinois Constitution of 1970 gave certain "home-rule" municipalities broad power to deal with problems which were local in nature. Normal is a home-rule municipality. Under the 1970 Constitution, a home-rule municipality "may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare." Ill. Const. 1970, art. VII, §6(a).

The power given to a municipality to deal with local problems is broad and generally considered to be coextensive with that of the sovereign, except where such powers are limited expressly by the General Assembly. (*City of Urbana v. Houser* (1977), 67 Ill. 2d 268, 273, 367 N.E.2d 692, 694.) Municipalities have broad powers with respect to the control of alcoholic beverages. (*Illinois Liquor Control Comm'n v. City of Calumet City* (1975), 28 Ill. App. 3d 279, 283, 328 N.E.2d 153, 156.) This power is exercised concurrently by the State and local municipalities. *Aurora Pizza Hut, Inc. v. Hayter* (1979), 79 Ill. App. 3d 1102, 1110, 398 N.E.2d 1150, 1156-57.

■ Under the Illinois Constitution of 1970, it is necessary to determine whether the subject regulated properly pertains to local government and affairs. For a home-rule municipality to enact a valid ordinance, the subject to be regulated must pertain to local government affairs and not be of a statewide or national concern. *City of Carbondale v. Yehling* (1983), 96 Ill. 2d 495, 498, 451 N.E.2d 837, 839.

The Committee on Local Government of the constitutional convention stated:

"[T]he powers of home-rule units relate to their own problems, not to those of the state or the nation. Their powers should not extend to such matters as divorce, real property law, trusts, contracts, etc. which are generally recognized as falling within the competence of state rather than local authorities. *** The intent of this draft, as in the Committee's proposal, is to give broad powers to deal with local problems to local authorities." 7 Record of Proceedings, Sixth Illinois Constitutional Convention 1621-22.

■ At trial, the chief of police of Normal testified an inordinate amount of police time is spent dealing with underage drinking and associated crimes such as vandalism and battery. Underage drinkers and lawful drinkers buy beer at college parties. This contributes to vandalism, loud noise, fights and public urination. Normal has responded to these serious problems by enacting an ordinance which imposes greater or different penalties than State law. It is an appropriate local response to a local problem. While the evils associated with alcohol abuse are widespread, the constitution does not prohibit home-rule municipalities from dealing with these problems in different ways as long as the method does not conflict with or run contrary to State law. The ordinance is intended to motivate both retailers and wholesale distributors to become more responsible in their dealings with college students and other young people. The subject of alcohol control is a matter which is properly addressed by *both* State and local authorities. Normal has not exceeded its home-rule powers in attempting to control the abuse of alcohol by using a forfeiture ordinance.

Next, B & J contends that Normal's forfeiture ordinance, as applied to innocent owners, violates its substantive due process rights. The fourteenth amendment to the United States Constitution provides "No State shall *** deprive any person of life, liberty, or property, without due process of law ***." (U.S. Const., amend. XIV.) A similar provision is found in article I, section 2, of the Illinois Constitution. Ill. Const. 1970, art. I, §2.

If an affected person is not in a protected class, or the right infringed upon is not fundamental, the challenged legislation is permissible if it has a rational relationship to a legitimate governmental interest and is neither arbitrary nor discriminatory. *Kidd v. Industrial Comm'n* (1981), 85 Ill. 2d 534, 538, 426 N.E.2d 822, 824.

■ The control of alcoholic liquor is recognized as a legitimate governmental interest. A legitimately empowered governmental unit can address various problems associated with the sale, disposition or even prohibition of alcoholic liquor. (*Illinois Liquor Control Comm'n v. City of Joliet* (1975), 26 Ill. App. 3d 27, 30-31, 324 N.E.2d 453, 454-55.) Here, Normal regulates the sale and transfer of alcoholic beverages and provides remedies if these ordinances are violated. The control of alcoholic beverages and eradication of associated abuses are clearly legitimate governmental interests. However, the legislation being attacked must also bear a rational relationship to that interest.

A rational relationship exists if the challenged legislation, to some degree, tends to prevent some offense or evil or to preserve public health, morals, safety and welfare. (*People v. Weiner* (1915), 271 Ill. 74, 78, 110 N.E. 870, 872.) *Calero-Toledo v. Pearson Yacht Leasing Co.* (1974), 416 U.S. 663, 680, 40 L. Ed. 2d 452, 466, 94 S. Ct. 2080, 2090, examined the rationality of a forfeiture statute as applied to innocent owners.

*Calero-Toledo* involved the forfeiture of a yacht under a Puerto Rico forfeiture statute. The owner, who lived in New York City, leased a boat to two residents of Puerto Rico for a five-year period. The boat was seized after authorities discovered a marijuana cigarette on board. The owner, who had no knowledge of the forfeiture until he tried to repossess the yacht for nonpayment of rent, sued for return of his boat. The Supreme Court rejected the owner's claim, holding that the innocence of the owner in a forfeiture proceeding is *almost* uniformly rejected as a defense. The Court justified the application of a forfeiture statute to an innocent owner by noting that its application to an innocent owner "may have the desirable effect of inducing them to exercise greater care in transferring possession of their property." *Calero-Toledo*, 416 U.S. at 688, 40 L. Ed. 2d at 471, 94 S. Ct. at 2094.

However, the Supreme Court, in *dicta*, acknowledged under certain circumstances a forfeiture, as against an innocent owner, may invite constitutional challenge:

"It therefore has been implied that it would be difficult to reject the constitutional claim of an owner whose property subjected to forfeiture had been taken from him without his privity or consent. [Citations.] Similarly, the same might be said of an owner

who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property." *Calero-Toledo*, 416 U.S. at 689, 40 L. Ed. 2d at 471, 94 S. Ct. at 2094-95.

■ According to *Calero-Toledo*, a forfeiture may violate a party's due process rights if (1) the owner is not in privity to the wrongdoer; (2) the property is taken without the owner's consent and then used in an unlawful manner; or (3) the owner was unaware of and uninvolved in the wrongful activity and he did all that reasonably could be expected to prevent the unlawful use of his property.

The existence of these exceptions has been referred to by numerous Federal courts. (See, *e.g., United States v. One Boeing 707 Aircraft* (5th Cir. 1985), 750 F.2d 1280, 1288; *United States v. 1966 Beechcraft Aircraft Model King Air* (4th Cir. 1985), 777 F.2d 947, 951; *United States v. Twenty Thousand, Seven Hundred Fifty-Seven Dollars & Eighty-Three Cents* (8th Cir. 1985), 769 F.2d 479, 482; *United States v. Six Thousand, Seven Hundred Dollars* (1st Cir. 1980), 615 F.2d 1, 3; *United States v. One 1975 Pontiac Lemans* (1st Cir. 1980), 621 F.2d 444, 448; *United States v. One Tintoretto Painting* (2d Cir. 1982), 691 F.2d 603, 607; *United States v. One 1976 Lincoln Mark IV* (W.D. Penn. 1979), 462 F. Supp. 1383, 1390; *United States v. One Brown 1978 Mercedes Benz* (E.D. Mo. 1987), 657 F. Supp. 316, 318-19.) Likewise, the probable existence of a privity exception has long been noted. See *Calero-Toledo*, 416 U.S. at 689, 40 L. Ed. 2d at 471, 94 S. Ct. at 2094; *J.W. Goldsmith, Jr.-Grant Co. v. United States* (1921), 254 U.S. 505, 512, 65 L. Ed. 376, 379, 41 S. Ct. 189, 191; *United States v. One Ford Coupe Automobile* (1926), 272 U.S. 321, 333, 71 L. Ed. 279, 286, 47 S. Ct. 154, 158.

Where a wrongdoer and property owner stand in direct privity to one another, the property owner has the opportunity to select to whom he shall entrust his property, to establish safeguards to ensure the safe return of this property and to see his property is used in accordance with the law. The more distant the relationship between the owner and the wrongdoer, the less opportunity an owner will have to meet the goal espoused in *Calero-Toledo, i.e.,* to exercise greater care in the transfer of his property to ensure it is used in accordance with the law.

Under the retailing scheme involved here, Anheuser-Busch shipped kegs of beer to B & J, which in turn delivered those kegs to local retailers. The retailers would then sell the beer to consumers. The kegs therefore were not sold, but were bailed. Their return was secured by a refundable deposit. B & J owned the tappers and ice barrels and dis-

tributed them to local retailers in exchange for a refundable deposit. Given the commercial scheme involved, B & J did not stand in direct privity to those who eventually used the property in an unlawful manner. This lack of privity deprives B & J of a *meaningful* opportunity to exercise control over the party who eventually used the property in an unlawful manner.

Perhaps companies such as Anheuser-Busch and distributors such as B & J should step forward and energetically develop procedures and safeguards to be *recommended* to retailers to avoid the problems encountered in Normal. However, whether the distributors and companies meet the social obligation they owe to the communities in which they do business is not the measure of what is constitutionally permissible. In this case B & J has no *direct* relationship to the consumer. B & J has no opportunity to see the purchaser or query his or her purpose in buying seven kegs of beer. Wedding receptions, political gatherings, social club fish frys and charitable fundraisers may all be served by beer kegs, tappers and ice barrels.

■ B & J is not charged with any greater legal duty simply because some of the retailers it services are located in a college community. This ordinance fails to meet even a minimal test of rationality because it extends its application to innocent owners not in privity with the wrongdoer and thus causes a burden to fall on the shoulders of the least culpable party in the transaction.

In so holding, we do not mean to discourage the laudable efforts of city legislators who attempt to deal with local problems in innovative ways. We would not be sympathetic if it appeared B & J artificially distances itself from wrongdoers, but the relationship between distributor and retailer is carefully regulated (Ill. Rev. Stat. 1991, ch. 43, par. 123), and B & J meets the exception of *Calero-Toledo.* In constructing innovative solutions, legislators must not ensnare those who lack culpability and whose lack of privity prevents them from establishing safeguards to ensure the lawful use of their property.

Accordingly, the judgment of the circuit court is reversed.

Reversed.

GREEN, P.J., concurs.

JUSTICE COOK, dissenting:
I respectfully dissent. I would find Normal's forfeiture ordinance to be a constitutional exercise of Normal's powers, and would affirm the decision of the trial court.

The majority correctly states the law which applies to this case. For purposes of substantive due process a test similar to that used in equal protection cases is employed: the statute will be upheld if it bears a rational relation to a legitimate legislative purpose and is neither arbitrary nor discriminatory. There is a presumption that the statute in question is valid; the burden of showing its invalidity is on the defendants. If there is any conceivable basis for finding a rational relationship, the law will be upheld. (*People v. Hamm* (1992), 149 Ill. 2d 201, 216, 595 N.E.2d 540, 546.) Where a statute deals with some fundamental right a more demanding form of review may be employed; such a statute might not be upheld unless it were shown to be necessary to promote a compelling or overriding interest. More demanding review is certainly not appropriate in this case. The control of alcoholic liquor has long been recognized as a legitimate governmental interest, one where extensive regulation is possible at various levels of government.

I cannot agree that an ordinance providing for seizure of beer kegs and other items used to facilitate violations of Normal's alcoholic liquor ordinance is not rationally related to Normal's purpose to reduce underage drinking and associated crimes such as vandalism and battery.

"Forfeiture of conveyances that have been used—and may be used again—in violation of the [liquor control] laws fosters the purposes served by the underlying criminal statutes, both by preventing further illicit use of the conveyance and by imposing an economic penalty, thereby rendering illegal behavior unprofitable." *Calero-Toledo*, 416 U.S. at 686-87, 40 L. Ed. 2d at 470, 94 S. Ct. at 2093-94.

The innocence of the owner of property subject to forfeiture has almost uniformly been rejected as a defense. (*Calero-Toledo*, 416 U.S. at 683, 40 L. Ed. 2d at 468, 94 S. Ct. at 2092.) As stated in *Calero-Toledo*, application of forfeiture statutes to innocent purchasers "may have the desirable effect of inducing them to exercise greater care in transferring possession of their property." (*Calero-Toledo*, 416 U.S. at 688, 40 L. Ed. 2d at 471, 94 S. Ct. at 2094.) The majority focuses, however, upon *dicta* in *Calero-Toledo* setting out a potential exception to its broad sweep:

"It therefore has been implied that it would be difficult to reject the constitutional claim of an owner whose property subjected to forfeiture had been taken from him without his privity or consent. [Citations.] Similarly, the same might be said of an owner who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his prop-

erty." *Calero-Toledo,* 416 U.S. at 689, 40 L. Ed. 2d at 471, 94 S. Ct. at 2094-95.

The imprecise *Calero-Toledo dicta* provides no justification for striking down the considered decision of a legislative body in the facts of this case. Looking at the second sentence of the *Calero-Toledo dicta,* there is no evidence that intervenor was unaware of the underage drinking and related problems testified to by Normal's chief of police. Intervenor does not argue the incident leading to forfeiture in this case did not involve a violation of Normal's liquor control ordinance, or that intervenor's property was not used in the incident. In *Calero-Toledo* the boat owner was not shown to be involved with the marijuana found aboard the boat, but that is not true here. Intervenor in a very real sense was involved in the unlawful consumption of beer testified to by the witnesses; intervenor actually supplied that beer. Although intervenor no doubt intended that the beer be consumed lawfully, intervenor did profit financially from illegal consumption.

Nor can it be said that intervenor has done all that reasonably could be expected "to prevent the proscribed use of its property." There was evidence that security deposits were required for the items seized here, but those deposits were kept to an artificially low level, apparently to promote the sale and consumption of beer. An increase in security deposit may be one method "to prevent the proscribed use" of the property. Intervenor argues that a higher deposit would inhibit beer sales in general, but not illegal beer sales, where the consumers might be willing to risk the penalty. Intervenor could at least protect itself by higher deposits, and Normal might well have concluded that the risk to the illegal consumer of losing higher security deposits would tend to reduce illegal consumption. Normal may have concluded that any burden on legal sales was warranted in light of the burden imposed on illegal sales. Even if Normal could not identify a specific method by which intervenor could do more to prevent illegal use of its property, the reasonable possibility that experienced distributors could devise such a method is sufficient to sustain the ordinance and the incentive it provides distributors to exercise greater care.

Intervenor argues the ordinance is not rational because it will only force illegal consumption into other alternatives, such as the use of cans. The quick answer to that argument is that the legislature " ' "may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." *Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 489.' " (*Hamm,* 149 Ill. 2d at 211, 595 N.E.2d at 544.) Normal may also have concluded that a

switch to other alternatives would involve an increase in cost which would have a deterrent effect on illegal consumption.

The majority indicates the *Calero-Toledo dicta* contains three separate exceptions: (1) where there is no privity, (2) where the property was taken without consent, and (3) where the owner was uninvolved, unaware, and had done all he could do. In my view only one exception is suggested, and it is not sufficient for intervenor to simply show he was not in privity with the user. The fact that the owner was not in privity is just one more consideration in determining whether the intervenor has proved "that he had done all that reasonably could be expected to prevent the proscribed use of his property." The cases cited by the majority which follow *Calero-Toledo* focus on that final sentence of the *Calero-Toledo dicta*; none of them rely on a lack of privity.

Intervenor here is a beer distributor, which buys from manufacturers and sells to retailers such as taverns, liquor stores, and grocery stores, which in turn sell beer to the ultimate consumer. Whatever weight the privity argument may have in other contexts, it has little here, especially an argument of vertical privity. In this case the manufacturer, the distributor, and the retailer shared a common objective, the sale of beer. Intervenor intended that retailers would resell the beer sold them, and to assist the retailers in that objective intervenor made the beer kegs and other items owned by it available to the retailers. Some statutes, such as the Drug Asset Forfeiture Procedure Act (Ill. Rev. Stat. 1991, ch. 56½, par. 1678), provide an "innocent owner" exception. It is interesting that that particular exception does not apply unless the owner "could not reasonably have known of the conduct or that the conduct was likely to occur," and "did not stand to acquire substantial proceeds from the conduct." Ill. Rev. Stat. 1991, ch. 56½, pars. 1678(A)(i), (B).

Nor is intervenor aided by its horizontal privity argument that the users who purchased the beer and leased the kegs were of legal age, but those users allowed others, with whom the retailers were not in privity, to use the products illegally. Intervenor has not shown that it was unaware of that practice. A lessor of a yacht may not have reason to suspect the lessee will allow others to use it, but a lessor of beer kegs must expect that others than the customer dealt with will use the product. The risk of illegal consumption may be more acute when the lessee is not in the regular business of selling alcoholic beverages. I disagree with the statement of the majority that "lack of privity deprives B & J of a *meaningful* opportunity to exercise control over the party who eventually used the property in an unlawful manner." (Emphasis

in original.) (234 Ill. App. 3d at 722.) Intervenor has not sustained its burden of proving facts which would support that statement.

Because the legislation challenged here, at least to some degree, tends to prevent some offense or evil or to preserve public health, morals, safety and welfare (*People v. Weiner* (1915), 271 Ill. 74, 78, 110 N.E. 870, 872), the legislation has a rational relationship to a legitimate governmental interest, and does not violate substantive due process. Intervenor should direct its arguments to the legislative body, not to the courts.

Accordingly, I dissent.