THE CITY OF NAPERVILLE, Plaintiff-Appellee, v. WILLIAM G. LERCH, Defendant-Appellant.

Second District   Nos. 2—89—0539, 2—89—0840 cons.

Opinion filed June 8, 1990.

George A. Thomas, of Thomas & Konewko, Ltd., of Glen Ellyn, for appellant.

Francis J. Cuneo, Jr., of Naperville, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Defendant appeals from two orders of the circuit court of Du Page County imposing one year's court supervision on defendant and awarding attorney fees to the plaintiff. We affirm in part and reverse in part.

Defendant, William G. Lerch, was charged with driving under the influence of alcohol (Naperville, Ill., Municipal Code, title 11, ch. 1, §11—1—6, par. 1, subpar. 1.4) and driving with a blood-alcohol content of .10% or greater (Naperville, Ill., Municipal Code, title 11, ch. 1, §11—1—6, par. 1, subpar. 1.3) on March 6, 1987. Plaintiff, City of Naperville, later moved for, and was granted, leave to amend the complaints to charge defendant with being in actual physical control of a motor vehicle while under the influence of alcohol and being in actual physical control of a motor vehicle while having a blood-alcohol content of .10% or more in his body, under the same code sections initially charged.

After receiving a confirmation of statutory summary suspension, defendant petitioned the court for a hearing to rescind the suspension. Following a hearing, the court found in favor of defendant and rescinded the suspension because the arrest did not occur on a public highway. Defendant then moved to suppress evidence obtained in his allegedly illegal arrest. The record does not reveal the disposition of this motion. Defendant next filed a motion *in limine* to exclude the breath test result. This motion was granted in part and denied in part.

A jury was selected on February 21, 1989. On February 22, after the jury was sworn in, defendant moved for a mistrial based on a venireman's statement that he believed that he knew defendant from their common membership in Alcoholics Anonymous. The court reserved ruling on this oral motion. Trial by jury followed, and defendant was found guilty of both charges on February 23. Defendant's motion for a mistrial was then denied.

On March 2, plaintiff filed a motion seeking attorney fees pursuant to title 1, chapter 4, section 1—4—1, paragraph 2, subparagraph 2.3 of the Municipal Code of the City of Naperville. On March 23, defendant filed various post-trial motions for a new trial and a motion for judgment notwithstanding the verdict. Defendant's motions were denied on April 28. On that same date, the court ordered defendant to serve a period of one year under court supervision. On May 30, defendant filed a notice of appeal from this order. After written and

oral arguments, the court on August 21 granted the city's petition for attorney fees and ordered payment of $1,120 by defendant. On August 22, defendant filed a notice of appeal from this award of fees. These two appeals are now consolidated in the case before us.

Defendant first contends that he was denied a fair and impartial jury. During *voir dire,* the following colloquy took place amongst the court, both counsel, and Mr. Kafka, a venireman in the last chair of the final panel of jurors selected:

"Q. [THE COURT]: Mr. Kafka?

A. [MR. KAFKA]: Your Honor, may I speak?

Q. What is it you wish to say, sir?

A. I did not recognize Mr. Lerch by name but having studied his face, I believe I know him from a community organization.

Q. Do you know that you do in fact know him?

A. I believe it. We haven't had close contact in several years but previous to that we were in a community organization together I believe.

THE COURT: Any objection to either side if I excuse Mr. Kafka?

MR. CUNEO: What organization was it?

THE COURT: I don't know.

MR. THOMAS: Judge, I don't know that that's necessarily relevant.

THE COURT: All right. Let me ask you Mr. Kafka if this is only a casual acquaintanceship from several years ago and you are not sure until looking at the gentleman even closely that you know him, would it be fair to say that your knowledge will not interfere with your ability to decide this case?

MR. KAFKA: I might be impartial. The group I am speaking of is Alcoholics Anonymous to which I have belonged for 12 years and I have been a sober member for the past seven years.

THE COURT: Again, it would be my feeling that maybe the gentleman should be excused. Any strong objection from either side?

MR. THOMAS: None.

THE COURT: Mr. Cuneo?

MR. CUNEO: No, Your Honor.

THE COURT: You will be excused."

The other three veniremen on that panel heard the proceedings and were sworn in as jurors. Defendant did not object to the proceedings

or move for a mistrial at that point. The next day, however, defendant moved for a mistrial after the jury was sworn but before opening statements. The court reserved ruling on the motion until the verdict was returned, at which time the motion was denied.

■■ ■ Defendant accepted the three jurors he now alleges were tainted by exposure to the venireman's statement. Failure to exercise a peremptory challenge or to challenge a juror for cause waives any objection to that juror. (*People v. Davenport* (1985), 133 Ill. App. 3d 553, 559.) Defendant's window of opportunity to challenge the three allegedly tainted jurors closed when defendant accepted them for service on the jury. He cannot later charge that they should have been dismissed. Any objection to their presence on the jury has been waived.

Defendant next contends that he was denied a fair trial by a jury instruction given by the court. Plaintiff's tendered instruction No. 20, given by the court, stated:

" 'Actual physical control' does not require evidence that defendant drove or even attempted to drive."

Defendant objected to this instruction, arguing that it was surplusage and that the content of the instruction was covered elsewhere. He did not, however, tender a different instruction.

■■ ■ The instruction in question here was a non-Illinois Pattern Jury Instruction and was based on the case of *People v. Brown* (1988), 175 Ill. App. 3d 676. Defendant, in his motion for a new trial and here on appeal, argues that the holding in *Brown* should be superseded by the reasoning in *People v. Cummings* (1988), 176 Ill. App. 3d 293. Whether this court chooses to adopt the reasoning set forth in *Cummings*, however, is irrelevant to this case. While defendant did object to the instruction given, he failed to tender an instruction which would have cured the alleged defect in the instruction given. Such a failure precludes a party from raising the issue on appeal. (*People v. Tannenbaum* (1980), 82 Ill. 2d 177, 180; 107 Ill. 2d R. 366 (b)(2)(i).) This issue is, therefore, waived.

Defendant next contends that the court erred in admitting evidence of the results of defendant's breathalyzer test. Defendant maintains that he was coerced into submitting to the test when the arresting officer allegedly incorrectly informed him that his driving privileges would be suspended if he did not take the test. The trial court granted in part defendant's motion *in limine,* excluding evidence of the admonition given to defendant but allowing evidence of the test and its result.

■ Defendant was admonished pursuant to section 11—501.1(a)

of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.1(a)) (implied-consent statute) that a refusal to submit to testing to determine blood-alcohol content would result in suspension of his driver's license. However, defendant was arrested in a private parking lot; the implied-consent statute applies only to persons who drive or have physical control of motor vehicles upon the public highways. (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.1(a); see also *People v. Kissel* (1986), 150 Ill. App. 3d 283, 286, *overruled on other grounds sub nom. People v. Brown* (1988), 175 Ill. App. 3d 725.) According to defendant, this improper admonition coerced him into submitting to the test and the involuntary nature of his submission should have precluded the admissibility of evidence of the test.

■ Defendant has failed to cite a single case in support of his position. The mere assertion that defendant's submission to the test was coerced is not an adequate argument. This issue is inadequately briefed and is considered waived.

Defendant next contends that the court erred in awarding plaintiff attorney fees. Defendant raises six arguments as to why the award of fees was error, including: (1) the court has no power to assess attorney fees in the absence of statutory authority; (2) the issue of fees is preempted by the legislature; (3) the power to assess attorney fees as costs is not within the scope of home rule powers; (4) the ordinance under which the fees were awarded impermissibly interferes with the State's judicial system; (5) the ordinance is unconstitutionally vague; and (6) the ordinance has a chilling effect on the right to a jury trial. Because of our ruling, we need not address each of these arguments. We conclude that the award of attorney fees was error, and we reverse the order awarding fees.

■■ In general, the absence of a statute or an agreement of the parties precludes the recovery of attorney fees or the costs of litigation. (*Hamer v. Kirk* (1976), 64 Ill. 2d 434, 437.) In the case before us, there is obviously no agreement between the parties to assess fees. Neither is there a statute which would authorize the award of fees. However, plaintiff argues that its ordinance is sufficient authority to award fees. According to plaintiff, an ordinance is synonymous with a statute, in meaning and effect, because both are legislative acts. We find this argument unpersuasive. The terms "statute" and "ordinance" are defined in several places throughout the laws of this State. In the Municipal Code of 1961, "ordinance" is defined as "an ordinance adopted and approved by the corporate authorities of a municipality." (Ill. Rev. Stat. 1989, ch. 24, par. 11—74.5—2(*l*).) "Statute" is defined as "the Constitution or an Act of the General Assembly of

this State" in the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, par. 2—22) and as "an act adopted by the General Assembly of this State or by the Congress of the United States" in the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1989, ch. 85, par. 1—209). These definitions clearly do not equate an ordinance with a statute. In addition, we have found no case law, nor has plaintiff provided any, that raises an ordinance of a municipality, even a home rule municipality such as plaintiff, to the level of a statute of the General Assembly. It is true, as maintained by plaintiff, that both statutes and ordinances are legislative acts. However, it does not of necessity follow that they are the same. Neither the legislature, nor the courts, have so held. Therefore, we conclude that, in the absence of a statute passed by the General Assembly, the court had no authority to award attorney fees to the city. The order granting such fees is reversed.

The judgment of the circuit court of Du Page County is affirmed in part and reversed in part.

*Affirmed in part; reversed in part.*

UNVERZAGT, P.J., and WOODWARD, J., concur.