THE CITY OF CHICAGO, Plaintiff-Appellee, v. THE VILLAGE OF ELK GROVE VILLAGE, Defendant-Appellant.

First District (6th Division)   No. 1—03—1441

Opinion filed December 10, 2004.

Ronald G. Zamarin, of Palatine, for appellant.

Mara S. Georges, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Jane Elinor Notz, of counsel), for appellee.

JUSTICE McNULTY delivered the opinion of the court:

The Village of Elk Grove Village (Village), a home rule municipality, enacted an ordinance that imposed a fee on any property owner who sought to disconnect property from the Village. The City of Chicago, which had begun negotiations to purchase property in the Village as part of a program to expand O'Hare International Airport, sued for a judgment declaring the ordinance unconstitutional. The trial court granted the City judgment on the pleadings. We hold that the constitution does not permit an individual home rule unit to legislate on matters of disconnection. Therefore we affirm the judgment of the trial court.

## BACKGROUND

On July 23, 2002, the Village passed Ordinance No. 2901, entitled "An Ordinance Establishing a Disconnection Fee for All Owners of Property Who Disconnect Said Property from the Village or Remove Property from the General Real Estate Tax Rolls as Assessed by the County Assessor." The ordinance provides:

"WHEREAS, The cost to operate and maintain all of the Village property and the cost to provide all of the Village's public services *** is $67,529,558; and
***

WHEREAS, *** it has been determined that 58.8% of the Village's revenue comes from the industrial/commercial areas; 23.5% from the residential property; *** and

WHEREAS, Based on the above-stated costs and revenues and the stated acreage, it has been determined that the annual effect on the Village on a per acre basis by the disconnection of property and territory from the Village or otherwise by the removal of property from the tax rolls is $10,049 per acre for industrial/commercial property and $3,384 per acre for residential property; and

WHEREAS, *** it is deemed reasonable to determine that the annual adverse effect on the Village would extend for a minimum of forty (40) years ***.

NOW, THEREFORE BE IT ORDAINED *** as follows:
* * *

A. Fee Established: There is hereby established a Disconnection Fee to offset the adverse effect over a 40 year period for any property *** which disconnects from the Village ***. The fee shall be equal to $401,960 per acre or portion thereof of industrial/commercial property which is removed from the Village's Tax Base by disconnection, tax exemption or otherwise, and $135,360 per acre or portion thereof for any residential property ***.

B. Notice: Any person, firm corporation or other entity or owner of property who owns property in Elk Grove Village and who attempts to remove said property from the Village's Tax Base shall first notify the Village Clerk of such removal, prior to the date the removal becomes effective. ***

C. Statement of Required Fee/Time of Payment: Upon receipt of the Notice required herein, the Village Clerk in conjunction with the Department of Finance shall calculate the fee that is due and owing to the Village, and provide *** a statement to the owner *** setting forth the amount of the fee. Payment shall be made to the Village *** and must be received within thirty (30) days from the date the statement is received.

D. Express Contract: An act of disconnection \*\*\* shall constitute an agreement to the terms herein \*\*\*.

E. Lien: The amount of fee \*\*\* if not paid prior thereto, shall, on the date the removal becomes effective, be a lien upon the property being disconnected \*\*\*. The Village may foreclose this lien in the same manner \*\*\* as in the foreclosure of any other lien \*\*\*." Village of Elk Grove Village, Ill., Ordinance No. 2901 (eff. July 23, 2002).

The City sought to purchase commercial properties in the Village to use in reconfiguring the runways at O'Hare. To add the properties to the airport the City would need to disconnect the properties from the Village. On July 24, 2002, the City sued for a judgment declaring the ordinance void. The Village admitted in its answer that "the Ordinance is directed at property owners who disconnect property \*\*\* which would include the City of Chicago and/or the State of Illinois if they or either of them acquire property in Elk Grove Village in connection with plans for expansion of O'Hare." Both parties moved for judgment on the pleadings.

The trial court held that home rule municipalities had no power to legislate on matters of disconnection. Therefore, the court found "the Village exceeded its valid home-rule powers in enacting Ordinance No. 2901 \*\*\* [and] said ordinance \*\*\* is invalid, unenforceable, and unconstitutional." The Village filed this appeal.

Pending this appeal the General Assembly passed the O'Hare Modernization Act (Act) (Pub. Act 93—450, eff. August 6, 2003). The Act expressly authorizes the City to use quick take procedures to acquire property in the Village (Pub. Act 93—450, eff. August 6, 2003 (adding 735 ILCS 5/7—103.149)), and it provides:

> "It is the intent of the General Assembly \*\*\* that legal impediments to the completion of the [O'Hare Modernization Program (Program)] be eliminated.
>
> \* \* \*
>
> \*\*\* [T]he regulation and supervision of the City of Chicago's implementation of the O'Hare Modernization Program is an exclusive State function that may not be exercised concurrently by any unit of local government." Pub. Act 93—450, eff. August 6, 2003 (adding 620 ILCS 65/5(b), 30).

## ANALYSIS

We review *de novo* the decision to grant judgment on the pleadings. *Board of Trustees of the University of Illinois v. City of Chicago*, 317 Ill. App. 3d 569, 571 (2000). The Illinois Constitution of 1970 establishes the powers of home rule units:

> "Except as limited by this Section, a home rule unit may exercise

any power and perform any function pertaining to its government and affairs ***.

* * *

*** The General Assembly may provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit ***." Ill. Const. 1970, art. VII, §§ 6(a), (h).

The City contends that the Act provides specifically for the exclusive exercise by the State of all powers relating to the Program, and therefore the Act invalidates the ordinance. The City asks us to affirm the trial court's judgment on the basis of the Act.

The Act applies only to the Program. Apparently the Act disallows any attempt to apply the ordinance to property the City acquires and seeks to disconnect from the Village as part of the Program. But the ordinance on its face applies to any disconnection, whether or not the disconnection involves O'Hare in any way. The trial court held the ordinance completely invalid and unconstitutional, not merely invalid as applied to the City's acquisition of land for the Program. Because the effect of the trial court's ruling on the ordinance is much broader than the effect of the Act on the ordinance, we cannot affirm the judgment on the basis of the Act.

The constitution limits a home rule unit to legislation "pertaining to its government and affairs." Courts must decide

"[w]hether a particular problem is of statewide rather than local dimension *** not on the basis of a specific formula or listing set forth in the Constitution but with regard for the nature and extent of the problem, the units of government which have the most vital interest in its solution, and the role traditionally played by local and statewide authorities in dealing with it." *Kalodimos v. Village of Morton Grove*, 103 Ill. 2d 483, 501 (1984).

In *LaSalle National Trust, N.A. v. Village of Mettawa*, 249 Ill. App. 3d 550 (1993), Mettawa enacted an ordinance that required ratification by Mettawa voters for any attempted disconnection of property from the village. The court held:

"Disconnection is a matter of both local and statewide concern. *** Successful disconnection not only affects the boundaries of the municipality involved, but disconnection necessarily also affects the boundaries of other political subdivisions of the State, and the State has plenary power with respect to municipal boundaries ***.

*** [T]he traditional role of the State and the State's vital interest in disconnection make disconnection primarily a matter of statewide concern. *** [T]he legislature has the power to fix and control the territory and boundaries of municipalities." *Mettawa*, 249 Ill. App. 3d at 575-76.

The court found the ordinance pertaining to disconnection invalid because it did not strictly pertain to the government and affairs of Mettawa. *Mettawa*, 249 Ill. App. 3d at 577.

Our supreme court similarly held that "the legislature has the power to fix and control the territory and boundaries of municipal corporations." *Harris Trust & Savings Bank v. Village of Barrington Hills*, 133 Ill. 2d 146, 153 (1989); see also *In re Petition to Annex Certain Territory to the Village of North Barrington*, 144 Ill. 2d 353, 361 (1991). As one commentator observed:

"Generally, there continues to be little question about the existence of state authority over both municipal incorporation and territorial integrity. *** [T]hese subjects, by extending beyond municipal interests, are of statewide concern.

It is only a little less obvious that state power ought to be exclusive. The issue is one of initially establishing or altering territorial limits within the context of interrelations among local units of government, not one of governing within those limits. Home rule theory presupposing an existing corporation does not include the power to incorporate. Nor should courts easily imply the power to make territorial changes from home rule grants considering the detrimental effect that preference of municipal interests would have on the many other interests involved." G. Vaubel, *Toward Principles of State Restraint upon the Exercise of Municipal Power in Home Rule*, 20 Stetson L. Rev. 5, 12-13 (1990).

Thus, disconnection pertains to the government of the State, and not to the government and affairs of the home rule unit, within the meaning of section 6(a) of article VII.

The Village argues that the ordinance here does not regulate disconnection and it does not conflict with statutory disconnection procedures. Instead, the Village, through the ordinance, only seeks to allocate the costs of its services. But the constitution does not permit home rule units to collect taxes through legislation concerning matters that do not pertain to their government and affairs. *Ampersand, Inc. v. Finley*, 61 Ill. 2d 537, 540-41 (1975).

In *Ampersand* a Cook County ordinance imposed a fee of $2 for filing appearances in civil cases, to defray the costs of operating the county law library. A statute governing the filing of appearances at the time imposed a fee of $1. The ordinance did not conflict with any procedures established by the statute; it only increased the fee. The trial court declared the ordinance void. Our supreme court affirmed. Because the State unified the court system, access to the courts became a matter for the State. *Ampersand*, 61 Ill. 2d at 542-43.

"The charge of the fee, whether characterized as a tax or otherwise, as a condition to the right to litigate in the courts is a burden

which cannot be imposed by a home rule unit. We cannot accept defendants' argument that since the operation of the library is a local function so also is the imposition of the fee to support it. The payment of the fee under the ordinance is the price of admission to the courts of the State of Illinois and not to the Cook County Law Library." *Ampersand*, 61 Ill. 2d at 543.

The ordinance here changes the notice requirements for statutory disconnection, and it imposes a fee. The ordinance requires notice to the Village from any person "who attempts to remove *** property from the Village's Tax Base," and it requires the notice before the disconnection takes effect. Because statutory disconnection procedures do not provide for any delay between the court's decision on a disconnection petition and the time for the disconnection to take effect, the owner seeking disconnection must provide notice before the court decides whether to allow the disconnection. The clerk calculates the fee upon receipt of the notice and sends the statement of the amount due forthwith—presumably still before the court has decided whether to grant the disconnection. The owner must pay the fee within 30 days of receipt of the notice, regardless of whether the court has ruled on the petition for disconnection.

Thus, the fee here, payable 30 days after giving notice of the attempted disconnection, is like a filing fee. But the minimum filing fee under the ordinance is not $2, as in *Ampersand*. Here, the minimum disconnection area allowed by the statute is 20 acres (65 ILCS 5/7—3—6 (West 2002)) and the ordinance sets a minimum fee per acre of $135,360, so the ordinance imposes a fee of at least $2,707,200. If the county could not burden persons seeking access to the county court with an added $1 fee for appearances, neither can the Village burden access to the courts for disconnection proceedings with an added $2.7 million fee. Characterizing the fee as a tax to support Village services for the next 40 years has no more effect than the characterization of the fee in *Ampersand* as a tax to support the county law library. The Village cannot so burden access to the courts for disconnection proceedings.

Finally, we note that some limits apply to a home rule unit's power to tax. "[L]evies which result in an unnecessary accumulation of funds are invalid. *** [A] tax levy in an amount largely in excess of the requirements for the particular purpose during the ensuing year is illegal and void." *People ex rel. Brenza v. Morrison Hotel Corp.*, 4 Ill. 2d 542, 547 (1954). The Constitution of 1970 did not change the law to authorize excessive accumulations of funds. Because the ordinance provides for immediate payment of taxes covering 40 years of projected expenses, the ordinance exceeds the Village's taxing power.

The trial court correctly held that disconnection is not a matter pertaining to the government and affairs of an individual home rule unit, within the meaning of the constitution, and therefore the Village does not have the power to enact an ordinance concerning disconnection. The ordinance at issue, which imposes a fee of at least $2.7 million for disconnection, exceeds the Village's home rule power. Therefore, we affirm the trial court's decision finding the ordinance unconstitutional.

Affirmed.

TULLY and O'MARA FROSSARD, JJ., concur.