SECOND DIVISION

MARCH 31, 2005

No. 1-03-2446

THE VILLAGE OF GLENVIEW, an Illinois ) Appeal from the

Home Rule Municipal Corporation, ) Circuit Court of

     ) Cook County.

   Plaintiff-Appellant 
 ) Municipal 

   and Cross-Appellee,
 ) Department, Second

     ) District.

v.
 )

) 

MICHAEL ZWICK, ) The Honorable 

) Mary K. Rochford,    

   Defendant-Appellee )    Judge Presiding.

   and Cross-Appellant. )   

JUSTICE GARCIA delivered the opinion of the court.

On March 14, 2002, the plaintiff, Village of Glenview (Glenview), filed a second-amended complaint against the defendant, Michael Zwick, alleging that in addition to refuse ordinance violations, it was entitled to recover attorney fees from Zwick based on section 1.13 of its municipal code.  Glenview Municipal Code, ch. 1, §1.13 (eff. June 21, 1994).  Zwick moved to dismiss Glenview's petition for attorney fees.  On July 10, 2003, the circuit court granted Zwick's motion to dismiss finding section 1.13 was "an impermissible use of Glenview's home-rule powers [Ill. Const. 1970, art. VII, §6(a)] as it violates the 'American Rule' regarding each party's responsibility for its own attorney[] fees."

Glenview appeals arguing that it may, pursuant to its home rule authority, constitutionally require an opposing party to pay its reasonable attorney fees when it is the successful party in litigation involving the enforcement or defense of a provision of its municipal code. 

BACKGROUND

On March 14, 2002, Glenview filed a second-amended complaint against Zwick contending that from April 4, 2001, to March 8, 2002, and again on June 29, 2003, Zwick was issued 81 citations for repeated violations of its refuse ordinance.  Glenview Municipal Code, ch. 9, §
§9.28(d), 9.29(a), 9.29(g) (eff. February 6, 2001).  
Specifically, Glenview alleged that Zwick failed to place his garbage containers and recycling bins between the lot lines of his residence and failed to remove his garbage containers and recycling bins from the street by 7 p.m. on the date of service.  In its second-amended complaint Glenview also sought attorney fees.     

Following a bench trial, Zwick, a resident of Glenview, was found guilty of violating Glenview's refuse ordinance.  
The circuit court fined Zwick a total of $10,219.  

Glenview then went forth on its claim for attorney fees seeking recovery in the amount of $36,079.  In support of this claim, Glenview relied on section 1.13 of its municipal code, which states:

"If the Village proceeds in any court of record to enforce and/or defend any provisions of the Municipal Code of the Village of Glenview, as from time to time amended, and is successful in either the enforcement or defense proceeding as referred to herein, the Village shall recover its reasonable attorney[] fees and costs incurred in the course of those proceedings from the person and/or entity who has been found to have violated the Municipal Code of the Village of Glenview and/or who has initiated the proceedings."  Glenview Municipal Code, ch. 1, §
1.13 (eff. June 21, 1994).  

Zwick subsequently filed a motion to dismiss Glenview's claim for attorney fees.  In his motion to dismiss, Zwick alleged that Glenview's fee-shifting ordinance was an invalid exercise of its home rule authority.  See Ill. Const. 1970, art. VII, §6(a). Specifically, Zwick contended that section 6 allowed a home rule unit to "exercise any power and perform any function pertaining to its government and affairs."  Ill. Const. 1970, art. VII, §6(a). 
 Zwick then argued that Glenview's fee-shifting ordinance did not "pertain to its government and affairs" and, thus, turned the Illinois common law and the American Rule, under which each litigant bears the cost of his or her own legal expenses regardless of who is successful in the litigation (
Scholtens v. Schneider
, 173 Ill. 2d 375, 384, 671 N.E.2d 657 (1996)), on its head.

The circuit court granted Zwick's motion to dismiss finding the ordinance was an impermissible use of Glenview's home rule powers because the ordinance violated the American Rule that each party is responsible for its own attorney fees.

"This case presented two very conflicting principles or doctrines, if you will, of our state.  And one is the Home Rule powers of a municipal unit, and on the other hand the American Rule.  And I understand that Home Rule units are granted much power to enforce or enact legislation dealing with its citizens and its interests.  On the other hand, here it's going up against what is a fundamental principle of our jurisprudence, and that is the parties doing litigation bear their own fees.  And it is clear that Illinois courts have adhered consistently to this American Rule and have held that attorney[] fees shall not be allowed unless specifically authorized by statute, by agreement of the parties or the litigation has created a common fund."  

The circuit court also noted: 

"It appears that the purpose of the fee shifting ordinance is to discourage those charged with ordinance violations with asserting any defenses to the charges or challenging the constitutionality of the propriety of municipal ordinances."  

The circuit court surmised that citizens subject to the ordinance would be dissuaded from opposing "doubtful ordinances" where compliance would be less costly than litigation.  The circuit court also emphasized that the fee-shifting ordinance was "one sided" in that there was no award of fees to those who prevailed against Glenview.  

The circuit court then noted that the case law indicated a reluctance to reallocate the burden of litigation without legislative guidance and cited 
City of Naperville v. Lerch
, 198 Ill. App. 3d 578, 555 N.E.2d 1187 (1990) (award of attorney fees based on ordinance overturned as American Rule prevailed unless there was a statute or agreement to the contrary).  The circuit court also noted that although it was aware of landlord-tenant ordinances that provided for tenants to receive attorney fees, the circuit court found that these landlord-tenant ordinances were similar to state statutes awarding attorney fees to consumers or certain classes of individuals who were successful in claims regarding their rights.  The circuit court found those statutes dissimilar to, and distinguishable from, Glenview's fee-shifting ordinance.  The circuit court stated: 

"I find that the American Rule is so intrenched in our Court system in our jurisprudence that the Village does not have the authority to shift it under these circumstances."  

This appeal followed.

                 ANALYSIS            
       

We begin by noting that although no appellee's brief was submitted in this case, we are able to consider this appeal pursuant to 
First Capitol Mortgage Corp. v. Talandis Construction Corp.
, 63 Ill. 2d 128, 345 N.E.2d 493 (1976).

Turning to the merits, Glenview asserts that the sole question presented for our review is, "[w]hether a home rule unit may require the opposing party to pay the unit's reasonable attorney[] fees when the unit is the successful party in litigation involving enforcement or defense of a provision of its local municipal code."  Implicit in this question is the issue of whether section 1.13 was a valid and constitutional use of Glenview's home rule authority.  See Glenview Municipal Code, ch. 1, §
1.13 (eff. June 21, 1994);
 Ill. Const. 1970, art. VII, §6(a)
.  
"The construction of a municipal ordinance is a question of law, subject to 
de
 
novo
 review."  
City of Chicago v. Taylor
, 332 Ill. App. 3d 583, 585, 774 N.E.2d 22 (2002).    

A. Home Rule Authority

Glenview is a home rule unit.  
Village of Glenview v. Ramaker
, 282 Ill. App. 3d 368, 371, 668 N.E.2d 106 (1996).  Under the 1970 Illinois Constitution, a home rule municipality "'may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare.'"  
Town of Normal v. Seven Kegs
, 234 Ill. App. 3d 715, 718, 599 N.E.2d 1384 (1992), quoting Ill. Const. 1970, art. VII, §6(a).     

Although the "[p]owers and functions of home rule units shall be construed liberally" (Ill. Const. 1970, art. VII, §6(m)), a home rule municipality's powers are not absolute (see 
Endsley v. City of Chicago
, 319 Ill. App. 3d 1009, 1013, 745 N.E.2d 708 (2001)).  

Substantive restrictions on the exercise of local governmental powers have come from various constructions of the clause: "pertaining to its local government and affairs," which is considered a term of art.  
Village of Dolton ex rel Winter v. CSX Transportation Inc.
, 196 Ill. App. 3d 564, 566, 554 N.E.2d 440 (1990).  "For a home-rule municipality to enact a valid ordinance, the subject to be regulated must pertain to local government affairs and not be of a statewide or national concern."  
Town of Normal
, 234 Ill. App. 3d at 719.  Therefore, under the Illinois Constitution of 1970, it is necessary for us to determine whether the subject regulated pertains to Glenview's local "government and affairs."  See 
Town of Normal
, 234 Ill. App. 3d at 719. 

Moreover, "[t]he General Assembly can restrict the concurrent exercise of a home rule unit's power by enacting a law that specifically limits such power."  
Endsley
, 319 Ill. App. 3d at 1013.   

"Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive."  Ill. Const. 1970, art. VII, §6(I).  

Otherwise, "'[h]ome rule units *** have the same powers as the sovereign, except where such powers are limited by the General Assembly.'"  
City of Chicago v. Roman
, 184 Ill. 2d 504, 513, 705 N.E.2d 81 (1998), quoting 
Triple A Services, Inc. v. Rice
, 131 Ill. 2d 217, 230, 545 N.E.2d 706 (1989). 
 

With the above materials in mind, we turn to the determinative issue in this case: whether Glenview's fee-shifting ordinance, imposing on an opposing party the obligation to pay 
Glenview
's reasonable attorney fees when 
Glenview
 is the successful party in litigation involving the enforcement or defense of a provision of its local municipal code, pertains to 
Glenview
's government and affairs.
  We must also determine whether the General Assembly has specifically declared that the state's exercise of this power is exclusive.

B. Power

Glenview's home rule authority to create a fee-shifting ordinance is limited by the fact that "the subject to be regulated must pertain to local government affairs and not be of a statewide or national concern."  
Town of Normal
, 234 Ill. App. 3d at 719.
  
Glenview's brief contends that "[o]ne of the most important things a governmental unit can do pertaining to its government and affairs is to protect public funds."  Glenview then states that its "attorney[] fee[s] ordinance is one of the methods that Glenview has chosen by which to protect public funds and curb abusive litigation." 

In his motion to dismiss, Zwick argued that Glenview's fee-shifting ordinance did not pertain to its government and affairs.  Moreover, the circuit court, in its consideration of Zwick's motion to dismiss, found that Glenview's fee-shifting ordinance would have a chilling effect on citizens claiming a defense to a municipal ordinance or challenging its constitutionality. 

In construing Glenview's ordinance we must be mindful of the mandate of section 6(m), that "[p]owers and functions of home rule units shall be construed liberally."  Ill. Const. 1970, art. VII, §6(m).  "Although mindful of the liberal construction mandate, we have struck down home rule ordinances where they did not pertain to the government or affairs of the local unit."  
Ampersand, Inc. v. Finley
, 61 Ill. 2d 537, 542, 338 N.E.2d 15 (1975).

An ordinance pertains to local government and affairs where it addresses local, rather than state or national problems.  
Schillerstrom Homes, Inc. v. City of Naperville
, 198 Ill. 2d 281, 290, 762 N.E.2d 494 (2001).  "'Whether a particular problem is of statewide rather than local dimension must be decided not on the basis of a specific formula or listing set forth in the constitution but with regard for the nature and extent of the problem, the units of government which have the most vital interest in its solution, and the role traditionally played by local and statewide authorities in dealing with it.'" 
Schillerstrom Homes
, 198 Ill. 2d at 290, quoting 
Kalodimos v. Village of Morton Grove
, 103 Ill. 2d 483, 501, 470 N.E2d 266 (1984). 

Regarding the traditional role of local and statewide entities, under the state's Constitution of 1870, local courts could be established as provided for by statute.  See 
Ampersand
, 61 Ill. 2d at 542.  An amendment to article VI of the Constitution of 1870, effective January 1, 1964, established a unified court system in Illinois.  See 
Ampersand
, 61 Ill. 2d at 542.  "Under the amendment there was no authority for the continuance of local courts nor was there any provision in the amendment for the creation or authorization of local courts by the legislature."  
Ampersand
, 61 Ill. 2d at 542.  This same scheme continues to exist under the state's Constitution of 1970.

Glenview's brief states that "if the legislature could abolish or modify the American [R]ule, then a home rule unit could do likewise, where the litigation involves the home rule unit's own local municipal code."  Glenview also contends that "there is no state statute which specifically limits the power of home rule units to regulate attorney[] fees in litigation involving the governmental entity's municipal code and no indication that enforcement of a municipal code of a home rule unit is a matter of statewide concern."
  

Glenview's statement goes too far.  Although the General Assembly has a general power to abolish or modify the American Rule as it sees fit, "the 1970 Constitution does not contemplate nor does it authorize the exercise of any control over or permit the imposition of a burden on the judicial system by any local entity."  
Ampersand
, 61 Ill. 2d at 542.  Moreover, Glenview can only regulate subjects that pertain to its local government and affairs.  
  

 "The administration of justice under our constitution is a matter of statewide concern and does not pertain to local government or affairs."  
Ampersand
, 61 Ill. 2d at 542.  
We note that "[w]ith few exceptions, the 'American Rule' remains the general rule in Illinois.  The general rule is that in the absence of a statute or an agreement to the contrary, the successful party may not recover attorney fees or the costs of litigation."  
Fischer v. Brombolich
, 246 Ill. App. 3d 660, 663, 616 N.E.2d 743 (1993), citing 
Hamer v. Kirk
, 64 Ill. 2d 434, 437, 356 N.E.2d 524 (1976).
  

Regarding the American Rule, we acknowledge Glenview's research demonstrating that the General Assembly has chosen, in some instances, to abrogate the American Rule.  See, 
inter
 
alia
, 765 ILCS 710/1 (West 2002) ("Upon a finding by a circuit court that a lessor has refused to supply the itemized statement required by [the Security Deposit Return Act,] *** the lessor shall be liable for an amount equal to twice the amount of the security deposit due, together with court costs and reasonable attorney[] fees"); 765 ILCS 715/2 (West 2002) (upon a court finding that a lessor wilfully refused to pay interest on a security deposit, the lessor will be liable for reasonable attorney fees); 220 ILCS 5/5-201 (West 2002) (plaintiff's successful claim based on a public utility's acts or omissions entitles plaintiff to attorney fees); 765 ILCS 1033/50(d) (West 2002) (museum whose right to property is wrongfully challenged can recover reasonable attorney fees); 705 ILCS 225/1 (West 2002) (in action brought by mechanic, artisan, miner, laborer, servant or employee for wages, attorney fees are available if amount claimed in action is found to be amount due and demand was made for amount claimed at least three days before the cause of action was filed); 740 ILCS 125/1 (West 2002) (if individual disappears of own volition and search ensues without his or her attempting to stop it, individual may be liable for amounts expended by governmental units in the recovery effort, including attorney fees); 740 ILCS 58/5 (West Supp. 2003) (when a person over 18 gives alcohol or illegal drugs to a person under 18, the person of majority age may be responsible for attorney fees resulting from suits related to the conduct of the minor while under the influence); 415 ILCS 15/10.1(d) (West 2002) (liable for attorney fees if violation of Solid Waste Planning and Recycling Act is willing, knowing, or repeated).

We note that statutes imposing attorney fees can be characterized as falling within two categories.  The first set of statutes imposing attorney fees seems to be motivated to preserve the funds of a particular party.  For example, the statute protecting the security deposit of a tenant (765 ILCS 715/2 (West 2002)), and the endowment of a museum (765 ILCS 1033/50(d) (West 2002)).  The second set of statutes imposing attorney fees seems to do so as a deterrent for misconduct.  For example, an additional penalty of attorney fees is imposed on adults providing alcohol to minors (740 ILCS 58/5 (West Supp. 2003)), and those individuals faking their own disappearance (740 ILCS 125/1 (West 2002)).  Glenview's fee-shifting ordinance does not fall within either of these two categories.  We further note that the General Assembly's ability to modify the American Rule does not render the constitution's prohibition on a local entity's imposition of a burden on our state's judicial system void.   
  

Although we have determined that Glenview's fee-shifting ordinance imposed a burden on our state's judicial system in violation of our state's constitution, in finding that Glenview did not have the authority to create a fee-shifting ordinance, the circuit court cited 
Lerch
, 198 Ill. App. 3d 578, 555 N.E.2d 1187.  In 
Lerch
, the Appellate Court, Second District, found that an ordinance was not sufficient authority for awarding attorney fees.  Specifically, the 
Lerch
 court found that "statutes" and "ordinances" were not synonymous terms and stated, "we have found no case law, nor has plaintiff provided any, that raises an ordinance of a municipality, even a home rule municipality such as plaintiff, to the level of a statute of the General Assembly."  
Lerch
, 198 Ill. App. 3d at 584.  As there was no statute or agreement between the parties regarding the imposition of attorney fees, the 
Lerch
 court found that the circuit court had no authority to grant them.  
Lerch
, 198 Ill. App. 3d at 584.  

Since the 
Lerch
 opinion, our supreme court decided 
Roman
, 184 Ill. 2d 504, 705 N.E.2d 81.  
Roman
 dealt with an ordinance prohibiting assault against the elderly and a corresponding minimum penalty of 90 days' imprisonment.  
Roman
, 184 Ill. 2d at 508.  Our supreme court in 
Roman
 found that section 6(a) of the Illinois Constitution gave home rule units the broadest powers possible and that "'[h]ome rule units thus have the same powers as the sovereign, except where such powers are limited by the General Assembly.'"  
Roman
, 184 Ill. 2d at 513, quoting 
Triple A Services, Inc.
, 131 Ill. 2d at 230.  In 
Roman
, Chicago was found to have the authority, through its home rule powers, to define the offense of "assault against the elderly" and to pronounce a punishment for it.  
Roman
, 184 Ill. 2d at 513.  Effectively, 
Roman
 elevated a home rule municipality's ordinance to the level of a statute so long as (1) the ordinance pertained to the unit's government and affairs, and (2) the subject matter of the ordinance was not a excluded or preempted.  

We have found no Illinois cases, other than 
Lerch
, which specifically discuss a home rule municipality's ability to provide for attorney fees in its municipal code.  However, our research has uncovered cases concluding that the Illinois court system is unified and that it "does not contemplate nor does it authorize the exercise of any control over or permit the imposition of a burden on the judicial system by any local entity."  
Ampersand
, 61 Ill. 2d at 542.  As the issue presented in this case deals with access to our state's court system, a subject within the exclusive realm of the General Assembly, we find 
Ampersand
 to be instructional to our resolution
.  
As such, we find 
Roman
 distinguishable from the case 
sub
 
judice
.  
  

In 
Ampersand
, a Cook County ordinance directed the circuit court to collect a county law library fee of $2, payable at the time of the first filing or appearance by each party to a civil lawsuit.  
Ampersand
, 61 Ill. 2d at 538.  A similar state statute that imposed a $1 filing fee on parties to civil suits for the establishment, maintenance, and operation of county law libraries was found constitutional by our supreme court.  
Ampersand
, 61 Ill. 2d at 538; see 
Ali v. Danaher
, 47 Ill. 2d 231, 265 N.E.2d 103 (1970), Ill. Rev. Stat. 1973, ch. 81, par. 81.  The Cook County ordinance purported to supercede state statute.  
Ampersand
, 61 Ill. 2d at 538.  Our supreme court found that the state's constitution contemplates one unified, statewide court system.  
Ampersand
, 61 Ill. 2d at 542; Ill. Const. 1970, art. VI.  As such:

"The administration of justice under our constitution is a matter of statewide concern and does not pertain to local government or affairs.  Since, as explained by the local government committee, the powers of a home rule unit relate only to its own affairs and not to those of the State, we conclude that the ordinance imposing the filing fee is invalid."  
Ampersand
, 61 Ill. 2d at 542-43.   

Similarly, in 
City of Chicago v. Village of Elk Grove
, 354 Ill. App. 3d 423 (2004), it was determined that the constitution did not permit an individual home rule unit to legislate on matters of disconnection.  In 
Elk Grove
, the village of Elk Grove passed an ordinance imposing a fee, of $135,360 per acre for residential property, and $401,960 per acre for industrial or commercial property, on any property that the owner sought to disconnect from the village.  
Elk Grove
, 354 Ill. App. 3d at 424
.  The village argued that the ordinance did not regulate disconnection, but instead only helped the village cover the costs of its services.  However, the 
Elk Grove
 court found that "the constitution does not permit home rule units to collect taxes through legislation concerning matters that do not pertain to their government and affairs."  
Elk Grove
, 
354 Ill. App. 3d at 427
.  The court in 
Elk Grove
 then likened the village's disconnection fee to the filing fee imposed in 
Ampersand
.  "If the county could not burden persons seeking access to the county court with an added $1 fee for appearances, neither can the village burden access to the courts for disconnection proceedings with an added $2.7 million fee."  
Elk Grove
, 354 Ill. App. 3d at 428
.

In the case 
sub
 
judice
, we agree with the 
Elk Grove
 court that 
Ampersand
 instructs that we have a state wide court system, and even an attempt to raise a court filing fee by $1 has been rejected as it restricts access to the courts.  "The administration of justice under our constitution is a matter of statewide concern and does not pertain to local government or affairs."  
Ampersand
, 61 Ill. 2d at 542.  We find that Glenview's fee-shifting ordinance falls under the auspice of 
Ampersand
, as the ordinance impacts access to the state's court system and does not pertain to Glenview's local government or affairs.  

In an attempt to distinguish 
Ampersand
, Glenview contends that "[t]he instant ordinance places no barrier upon any citizen's access to the court system."  Glenview goes on to argue that if an individual's claim "is thereafter found to be without merit, 
i.e.
 if he is not the prevailing party, then and only then may [Glenview] petition the court for the remedy of having the losing litigant pay [Glenview's] reasonable attorney[] fees."  

We disagree with Glenview's position.  The circuit court in this case noted that Glenview's citizens would be dissuaded from challenging "doubtful ordinances" where compliance would be less costly than litigation.  Effectively, Glenview's fee-shifting ordinance discourages residents and non residents of Glenview who receive a citation, from challenging that citation for fear that a loss in court will require not only a payment of the citation, and any fees associated with the challenge of the citation, but also the payment of Glenview's attorney fees.  We also note that Glenview's fee-shifting ordinance is one sided.  If Glenview successfully prosecutes a violator of its ordinance, it is entitled to recover attorney fees and the violator must pay the fine imposed as well as Glenview's attorney fees.  Conversely, if Glenview is unsuccessful in prosecuting a violator of its ordinance, it in essence wants the American Rule to apply and each party to pay its own attorney fees.     

Regarding the nature and extent of the problem in the present case, although Glenview contends it instituted its fee-shifting ordinance to "protect public funds and curb abusive litigation," it is hardly "abusive litigation" to contest the issuance of a citation under a municipality's ordinance.  The fear of incurring double attorney fees, a party's own, plus those of Glenview, and additionally having to pay the citation issued by Glenview, would undoubtedly have a chilling effect on residents and non residents contemplating a challenge to a citation issued because of a violation of a Glenview ordinance.  

In the case 
sub
 
judice
, Zwick sought to challenge over $10,000 in fines imposed by Glenview based on Zwick's violation of Glenview's refuse ordinance.  Upon being found guilty of violating Glenview's refuse ordinance, Zwick faced an additional financial burden of over $35,000 assessed as attorney fees.  The impact of Zwick's choice to challenge the $10,000 fine imposed by Glenview because of his violations of its refuse ordinance is clear.  Therefore, the attorney fees here, payable if Glenview is successful in enforcing or defending its municipal ordinance, hinders access to the state's court system and makes the nature and extent of the problem one of statewide concern.

Finally, regarding the unit of government with the most vital interest, we believe a citizen's access to the courts is a matter of statewide concern.  Any burden on the state's court system, such as Glenview's fee-shifting ordinance, imposed any time Glenview is successful in enforcing or defending its municipal code, regardless of whether a citizen made a good-faith decision to litigate a doubtful ordinance, is a matter of statewide concern.  "Because the State unified the court system, access to the courts became a matter for the State."  
Elk Grove
, 
354 Ill. App. 3d at 427
.  Because our constitution makes the administration of justice a matter of statewide concern, and not a matter pertaining to the "government and affairs" of a home rule municipality, the constitution does not permit Glenview's fee-shifting ordinance, even if its purpose is to protect public funds.  "[T]he Constitution does not permit home-rule units to collect taxes through legislation concerning matters that do not pertain to their government and affairs."  
Elk Grove
, 354 Ill. App. 3d at 427
.  Glenview's fee-shifting ordinance represents a real and immediate danger to a citizen's right to challenge a Glenview ordinance he or she finds doubtful, as it discourages litigation concerning the validity of any of its ordinances.  

All three factors outlined in 
Schillerstrom Homes
 and 
Kalodimos
 suggest that Glenview's fee-shifting ordinance placed a burden on the judicial system, an area of statewide concern.  Because the powers of a home rule municipality, like Glenview, must pertain only to its own government and affairs, and not to those of the state, we conclude that Glenview's fee-shifting ordinance is invalid. 
Glenview's ordinance attempts to regulate an area of statewide concern.  The state constitution does not permit the imposition of a burden on the judicial system by any local entity.  Therefore, we affirm the circuit court's finding that Glenview's fee-shifting ordinance is an illegitimate use of its home-rule powers.

We end by noting that the state has a valid concern regarding a citizen's access to our state's court system.  Although we liberally construe a home-rule municipality's powers and functions, a home-rule municipality has no authority to interfere with the state's court system.  Here, Glenview asserts that its fee-shifting ordinance pertains to its government and affairs because it was designed to (1) protect public funds, and (2) dissuade abusive litigation.  Regardless of Glenview's intent, we agree with the trial court that Glenview's fee-shifting ordinance effectively acts as a deterrent to citizens asserting a defense to an ordinance violation, or challenging the constitutionality of a municipal ordinance.  As such, we must reject Glenview's assertion that its fee-shifting ordinance pertains to its government or affairs because the administration of justice and access to the court system are matters of statewide concern.  See 
Ampersand
, 61 Ill. 2d at 542; 
La Salle National Trust, N.A. v. Village of Mettawa
, 249 Ill. App. 3d 550, 616 N.E.2d 1297 (1993) (ordinance requiring court to submit disconnection to a local vote before ordering disconnection impermissibly interfered with and infringed upon the state judicial system because statutory requirements mandated Illinois courts order disconnection if the statutory requirements for disconnection were met). 

CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed. 

Affirmed.

BURKE, P.J., and HALL, J., concur.