# Illinois Official Reports

## Appellate Court

---

**Youngberg v. Village of Round Lake Beach**, 2017 IL App (2d) 160539

---

| | |
|---|---|
| Appellate Court Caption | VALL YOUNGBERG, Plaintiff-Appellant, v. THE VILLAGE OF ROUND LAKE BEACH, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-16-0539 |
| Filed<br>Rehearing denied | July 14, 2017<br>August 16, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 15-MR-1595; the Hon. Margaret J. Mullen, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Bruce A. Slivnick, of Deerfield, for appellant.<br><br>Scott A. Puma and Megan A. Mack, of Ancel Glink Diamond Bush DiCianni & Krafthefer, PC, of Vernon Hills, for appellee. |
| Panel | JUSTICE BIRKETT delivered the judgment of the court with opinion. Justices Hutchinson and Zenoff concurred in the judgment and opinion. |

¶ 1    On June 9, 2016, defendant, the Village of Round Lake Beach (Village), issued citations to plaintiff, Vall Youngberg, for violating section 5-10-7(A) of the Village's municipal code (Village Code) (Round Lake Beach Municipal Code § 5-10-7(A) (amended Aug. 22, 2011)). That ordinance provides, "It shall be unlawful to store any vehicle upon open private land unless such vehicle shall be duly registered for operation on public highways in the state, as required by applicable statutes and/or by any administrative rule, regulation, or determination issued pursuant thereto." *Id.* There is no dispute that, on the date the citations were issued, two motor vehicles with expired registration stickers were parked on the driveway of Youngberg's residence. Youngberg challenged the validity of section 5-10-7(A) at an administrative hearing. The hearing officer ruled in the Village's favor, and Youngberg filed a complaint for administrative review in the circuit court of Lake County. The court affirmed the hearing officer's decision, and this appeal followed. We affirm.

¶ 2    Youngberg first argues that the Village lacks statutory authority to ticket him for keeping unregistered vehicles on his property. Youngberg observes that the Illinois Vehicle Code (625 ILCS 5/1-100 *et seq.* (West 2014)) prohibits the operation of unregistered motor vehicles on public highways (625 ILCS 5/3-701 (West 2014)) but does not proscribe storing an unregistered motor vehicle on private property. Although the Village has statutory authority to "define, prevent, and abate nuisances" (65 ILCS 5/11-60-2 (West 2014)), Youngberg contends that the Village has not done so in a manner that applies to this case. Section 5-10(A)-1 of the Village Code provides, "All inoperable motor vehicles, whether on public or private property within the corporate limits of the village and in view of the general public, be and they are hereby declared to be a nuisance." Round Lake Beach Municipal Code § 5-10(A)-1 (amended Apr. 12, 1988). Youngberg notes that he was not ticketed under that provision and that, in any event, the Village Code's definition of "inoperable motor vehicle" applies only to vehicles that are "incapable of being driven under [their] own motor power." Round Lake Beach Municipal Code § 5-10(A)-4 (amended Apr. 12, 1988). Furthermore, Youngberg maintains that the failure to register a motor vehicle kept on private land does not create a nuisance. It has been held that, where something clearly is not a nuisance, municipal authorities have no authority to declare otherwise by ordinance. *City of Streator v. Davenport Packing Co.*, 347 Ill. App. 492, 495 (1952) (citing *North Chicago City Ry. Co. v. Town of Lake View*, 105 Ill. 207 (1882)).

¶ 3    However, because, as is undisputed, the Village is a home rule municipality, our inquiry is not confined to the authority conferred on the Village by statute. Article VII, section 6(a), of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VII, § 6(a)) provides, in pertinent part, "Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Article VII, section 6(i), provides, "Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive." Ill. Const. 1970, art. VII, § 6(i). Home rule units are vested with a broad police power. *City of Evanston v. Create, Inc.*, 85 Ill. 2d 101, 115 (1981). Absent home rule authority, a municipality may exercise police

power only to the extent delegated to it by the General Assembly. See *City of Chicago v. Bethlehem Healing Temple Church*, 93 Ill. App. 2d 303, 307 (1968) (describing municipality's authority to exercise police power prior to the adoption of the Illinois Constitution of 1970, which brought municipal home rule to Illinois). For the reasons set forth below, we conclude that section 5-10-7(A) is a valid exercise of the Village's police power as a home rule unit. In light of that conclusion, the question of the Village's *statutory* authority is purely academic.

¶ 4    Until recently, our supreme court used a three-part test to determine whether a municipality may address a particular subject through its home rule power. See, *e.g.*, *Schillerstrom Homes, Inc. v. City of Naperville*, 198 Ill. 2d 281 (2001). In *Schillerstrom*, a real estate developer sought damages for a municipality's willful failure to timely approve a final plat of subdivision. *Id.* at 282-83. Section 11-12-8 of the Illinois Municipal Code (65 ILCS 5/11-12-8 (West 1998)) provided such a remedy, but a municipal ordinance pertaining to the subdivision of property provided no such remedy. *Schillerstrom*, 198 Ill. 2d at 288-89. The *Schillerstrom* court held that, because the ordinance was silent as to remedies, it did not supplant the statutory damages remedy. *Id.* at 293. As part of its analysis, the *Schillerstrom* court provided the following description of the three-part test to determine the validity of an ordinance enacted under a municipality's home rule power:

> "First, we must determine whether the disputed exercise of local government power falls within section 6(a)—that is, whether the local government's activity is a function pertaining to its government and affairs. [Citation.] If so, we must determine whether the General Assembly has preempted the use of home rule powers in this area. [Citation.] If not, we then must determine 'the proper relationship' between the local ordinance and the state statute. [Citation.]" *Id.* at 289-90.

Under the three-part test, the "proper relationship" between the ordinance and the statute depended on whether the ordinance interfered with a vital state policy. *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2013 IL 110505, ¶¶ 34-36.

¶ 5    Our supreme court has since explained that "the concept of a vital state policy trumping municipal power is analytically appropriate under section 6(a)." *City of Chicago v. StubHub, Inc.*, 2011 IL 111127, ¶ 22 n.2. Consequently, "[i]f a subject pertains to local government and affairs, and the legislature has not expressly preempted home rule, municipalities may exercise their power." *Id.* "In those circumstances, the 'proper relationship' between the local legislation and the state statute is established by section 6(i), providing that home rule units 'may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive.' [Citation.]" *Palm*, 2013 IL 110505, ¶ 36.

¶ 6    Here, Youngberg contests only whether the Village's ordinance pertains to its government and affairs. "An ordinance pertains to local government and affairs where it addresses local, rather than state or national, problems." *Schillerstrom*, 198 Ill. 2d at 290. Moreover, "[w]hether a particular problem is of statewide rather than local dimension must be decided not on the basis of a specific formula or listing set forth in the Constitution but with regard for the nature and extent of the problem, the units of government which have the most vital interest in its solution, and the role traditionally played by local and statewide authorities in dealing with it." *Kalodimos v. Village of Morton Grove*, 103 Ill. 2d 483, 501

(1984). Noting that unregistered vehicles cannot be legally operated on public streets, the Village argues that, when such vehicles are kept on private property, they are apt to attract vermin, to allow stagnant water to pool, and to become eyesores. There can be no doubt that a municipality's home rule power may be used to prevent such conditions, which adversely impact the health and welfare of the community. We note that aesthetic values are an aspect of public welfare. *Shachter v. City of Chicago*, 2011 IL App (1st) 103582, ¶ 100 (citing *Berman v. Parker*, 348 U.S. 26, 33 (1954)).

¶ 7        Youngberg argues that "it is the State of Illinois that has the most vital interest in making certain that state vehicle license fees are paid." Thus, in Youngberg's view, the ordinance at issue here does not pertain to the Village's government and affairs. Youngberg relies on *StubHub, Inc.*, 2011 IL 111127, *County of Cook v. Village of Bridgeview*, 2014 IL App (1st) 122164, *Village of Glenview v. Zwick*, 356 Ill. App. 3d 630 (2005), and *City of Chicago v. Village of Elk Grove Village*, 354 Ill. App. 3d 423 (2004). In each of those cases, the local ordinance was designed to regulate a matter in which the State had a vital interest and played a more traditional role than local government: the collection of taxes on Internet transactions (*StubHub*, 2011 IL 111127, ¶ 8), animal control and rabies prevention (*Bridgeview*, 2014 IL App (1st) 122164, ¶¶ 6-7), the administration of the justice system (*Zwick*, 356 Ill. App. 3d at 632), or the territory and boundaries of municipal corporations (*Village of Elk Grove Village*, 354 Ill. App. 3d at 424-25). Youngberg's reliance on these cases is misplaced. Obviously, the State has a more vital interest and a more traditional role than the Village in collecting motor vehicle registration fees that the State itself imposes. That, however, is at most an incidental feature of the ordinance, which serves the distinct—and distinctly local—function of helping to guard against unhealthy and unsightly conditions within municipal boundaries. We therefore conclude that the ordinance pertains to the Village's government and affairs and thus addresses a subject within its home rule power.

¶ 8        Youngberg also argues, however, that the ordinance exceeds the Village's police power as a home rule unit. "A municipal ordinance which bears *a reasonable relationship* to a public interest which needs to be protected and embodies a reasonable method by which the objective is to be attained is a valid exercise of police power." (Emphasis added.) *Village of Beckmeyer v. Wheelan*, 212 Ill. App. 3d 287, 295 (1991) (citing *City of Carbondale v. Brewster*, 78 Ill. 2d 111, 115 (1979)). Where an ordinance represents an exercise of police power, its validity under the due process clause "depends upon whether the '*** means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals.' " *Chicago Allis Mfg. Corp. v. Metropolitan Sanitary District of Greater Chicago*, 52 Ill. 2d 320, 327 (1972) (quoting *Lawton v. Steele*, 152 U.S. 133, 137 (1894)). "[I]n determining whether the ordinance is reasonable or not, the court must take into consideration the object to be accomplished, the means for its accomplishment, and all existing conditions and circumstances." *Greyhound Lines, Inc. v. City of Chicago*, 24 Ill. App. 3d 718, 723 (1974). Youngberg correctly notes that the problems at issue are rooted in how a particular vehicle is or is not used, rather than its registration status *per se*. Not all unregistered vehicles will become health hazards or eyesores, so the ordinance is somewhat overinclusive. At the same time, some properly registered vehicles might become health hazards or eyesores, so the ordinance is, perhaps, somewhat underinclusive as well. However, an ordinance that is overinclusive or underinclusive can still be sufficiently related to a legitimate interest to pass constitutional muster. *People v. Avila-Briones*, 2015 IL App

(1st) 132221, ¶ 83. In our view, it is reasonable to attack the problems associated with unused vehicles by prohibiting the unenclosed storage of vehicles that cannot be driven legally. Thus, the ordinance is a valid exercise of the Village's police power.

¶ 9     *City of Chicago v. Sachs*, 1 Ill. 2d 342 (1953), cited by Youngberg, does not change our conclusion. In *Sachs*, it was held that a zoning ordinance that permitted grade schools and high schools in an area zoned as an apartment-house district was invalid as applied to prohibit the use of a property as a prekindergarten play school. Noting that "an ordinance cannot be sustained which permits designated uses of property while excluding other uses not significantly different," the *Sachs* court held that "[a]s applied to defendant's property *under the present circumstances*, the ordinance is capricious and unreasonable, and is therefore invalid." (Emphasis added.) *Id.* at 345. It has since been held that this sort of as-applied challenge depends on the relevant permitted uses having actually been established on surrounding property. *Kanefield v. Village of Skokie*, 56 Ill. App. 2d 472, 481 (1965). Here, there is no evidence that property in the vicinity of Youngberg's is being used for storage of properly registered vehicles that do not operate on public streets. Accordingly, Youngberg cannot challenge the ordinance as applied.

¶ 10     For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

¶ 11     Affirmed.